(No. 36077.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HEBIE WRIGHT, Plaintiff in Error.

*Opinion filed March 22, 1963.—Rehearing denied May 29, 1963.*

DONALD S. JAFFE, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and EDWARD J. HLADIS and MATTHEW J. MORAN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

In 1957 Hebie Wright was found guilty of murdering David Langhorn following a trial before a jury in the criminal court of Cook County, and was sentenced to 66 years imprisonment. A writ of error was issued, and this court is asked to determine the merit in defendant's contention that the assistant State's Attorney committed reversible error in his argument to the jury.

A summary of the evidence is essential to an evaluation of defendant's claim that certain statements were inflammatory and prejudicial. The testimony indicates that Freddie Woody, who was the defendant's mistress and the mother of several children, of one of whom defendant was the father, lived on the third floor of an apartment building at 214 West 55th Street in Chicago in a room which she and defendant had previously shared. Five other apparently unmarried individuals, including decedent, lived in the

other five rooms on this floor and shared a common kitchen. Freddie Woody was steadily employed, but defendant was unemployed. He had moved out of the apartment sometime between February 1 and 11, following an argument with Freddie over $20 belonging to her which had disappeared and which she accused him of taking. On the evening of February 18, 1957, defendant came to Freddie's room. They visited, and defendant then went to the kitchen to get a drink. While there, decedent, whom defendant knew, came into the kitchen. Defendant testified that decedent then stated Freddie Woody "was David Langhorn's girl now," that defendant called him a liar and Langhorn pulled a pocket knife out and approached defendant with the knife in his raised hand; defendant grabbed deceased, they struggled, and defendant hit Langhorn who then fell. At this point defendant picked up a butcher knife from the table, ran toward decedent who was then on the floor and kicked him slightly to see if anything was wrong with him, then laid the knife on the table and left.

Freddie Woody testified that after defendant left her room she waited about five minutes, and then went after him; she met him coming out of the kitchen with a broken and bloody knife, which she knew to be his, in his hand; that he said, "That is the end of that." She then entered the kitchen and found decedent lying on the sink. She called several other roomers, Hugh Barron and Archie Smith, who came in and tried to carry Langhorn to his room but he fell to the floor. Defendant then returned and stamped decedent on the face with his foot, thereafter coming toward Freddie with a butcher knife which he had gotten from her room, threatening to cut one of the other roomers behind whom Freddie was hiding. Defendant then put the knife down, and "tussled" with Freddie, who pushed him in the bathroom, ran downstairs and called the police.

The roomer, Hugh Barron, died prior to trial. Archie Smith testified, corroborating, in the main, the statements of

Freddie Woody. The police officer who arrested defendant testified that defendant denied the stabbing but said, "I hit him"; another officer stated that at the station defendant denied knowing anything about what happened and said he wasn't there. A shorthand reporter, employed by the State's Attorney, testified to a conversation between defendant, an officer, and an assistant State's Attorney in which defendant said when he saw decedent lying on the floor, he noticed he was cut on the side. The cause of death was established to be a massive abdominal hemorrhage resulting from a stab wound.

The defendant now complains specifically of the assistant State's Attorney's argument in which he (1) referred to defendant as a "parasite" who never worked but was taking funds away from Freddie Woody and her three babies and also stole $20 from Freddie who needed the money to support herself and the three babies; (2) asked the jury if they were going to let murderers walk the streets so they could kill someone else; (3) pointed his finger at the defendant and called him a killer; and (4) ridiculed the self-defense claim of defendant. At the outset of our consideration of this alleged error, we are confronted with the fact that defendant was represented in this trial by co-counsel of his own choice, who raised no objection to this argument. Ordinarily, we would consider this a sufficient answer to the claim of error, but defendant has called our attention to *People* v. *Fort,* 14 Ill.2d 491, and *People* v. *Moore,* 9 Ill.2d 224, wherein we held that even in the absence of objection in the trial court, this court would consider the claimed error if the argument was so seriously prejudicial as to prevent the defendant from receiving a fair trial. However, we do not consider that the prosecutor's argument here can be so categorized. It is proper for the prosecuting attorney to reflect unfavorably on the accused, and to denounce his wickedness and even indulge in invective; he may dwell on the evil results of crime and

urge a fearless administration of the law. (*People* v. *Moore,* 9 Ill.2d 224, and cases there cited; *People* v. *Halteman,* 10 Ill.2d 74.) We have carefully considered the language here complained of, and are of the opinion that it was based upon the evidence and legitimate inferences therefrom.

The jury could scarcely have reached a conclusion other than one of guilt, and the penalty, while substantial, is justified by the brutal and vicious nature of the killing. Finding no substantial error, the judgment of the criminal court of Cook County is hereby affirmed.

*Judgment affirmed.*