THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARK ANTHONY MORANDO, Defendant-Appellant.

First District (2nd Division)   No. 86—65

Opinion filed April 29, 1988.

Paul P. Biebel, Jr., Public Defender, of Chicago (Kendall Hill, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Kenneth T. McCurry, James E. Fitzgerald, and Charles E. Antonietti, Assistant State's Attorneys, of counsel), for the People.

JUSTICE STAMOS delivered the opinion of the court:

Defendant appeals from his conviction at a capital jury trial and sentence by the trial judge to natural-life imprisonment without parole for the murder and armed robbery of a 57-year-old woman.

The issues on appeal are:

(1) Whether the trial court properly refused a defense request to recall a prosecution witness for cross-examination as to bias, interest, or motive to testify.

(2) Whether the State failed to establish the *corpus delicti* necessary to prove defendant guilty of armed robbery beyond a reasonable doubt.

(3) Whether the trial court properly instructed the jury regarding circumstantial evidence.

(4) Whether defendant's sentence was excessive and whether the trial court properly considered the question of lack of remorse in sentencing defendant.

(5) Whether the trial court properly permitted cross-examination of defendant as to his prior stealing.

(6) Whether the trial court properly permitted photographs of the victim, which had been admitted into evidence, to be taken to the jury room.

(7) Whether the State's closing argument contained improper remarks that had a material effect on the jury's verdict.

For the reasons that follow, we affirm.

## FACTS

Irene Dominick, the victim in this case, was shot once and killed at the rear entrance of her house at 5300 South Merrimac Avenue in Chicago between 7:30 and 8 p.m. on May 10, 1984. At trial, which began on October 28, 1985, her son testified that she had been wearing her rectangular, four-carat, yellowish diamond ring earlier on the day of her slaying, but it was not found on her body.

According to three prosecution witnesses, including one who knew neither defendant nor the other witnesses, defendant was seen crossing the street in the direction of the victim's house prior to the killing. In addition, one of defendant's acquaintances and one 11-year-old prosecution witness who was not acquainted with the other witnesses testified that they saw defendant running from the direction of the victim's house carrying a handgun just after the killing, although the juvenile witness had some initial difficulty in identifying defendant in the courtroom, where an exhibit blocked the view of defendant.

Two friends of defendant's testified that at about the time of the killing he had hurriedly entered their red Oldsmobile car while carrying a pistol and a large, rectangular ring, told them to drive away quickly, and informed them that he had had to shoot the lady on the corner because she would not give him her ring. They testified that he had left the car a short while earlier with the announced intent of collecting his sunglasses from the house of one of these friends; later, a pair of sunglasses identified as defendant's was recovered from that house. One of these friends testified that some five years earlier, defendant had expressed a desire to have the victim's ring.

Another witness from Tampa, Florida, testified to defendant's having made statements about contemplating stealing and about wishing to sell a ring that he claimed to have received from his grandmother. This witness and another from Tampa also testified that, soon after the killing, defendant produced a large, rectangular ring in Tampa and offered to sell it. Other witnesses testified that defendant had threatened one of them with an automatic pistol on the afternoon of the killing and that he had had the gun throughout the day and acted nervous, impatient, and intent on some mission.

The two friends of defendant's testified that, at his request after the killing, they drove him to an address in Lyons Township, where they left him.

One witness testified that in the early afternoon of the killing, he received a telephone call from defendant, who claimed that he had just been at the witness' house but no one was there; the witness testified that defendant then appeared two minutes later. The witness

also stated that he, his stepfather, and another man were sitting in the living room with the front door open at the time defendant claimed to have found no one at home. Telephone company records showed that a call from the victim's house to the witness' house had been placed at 1:42 p.m. that afternoon.

When defendant took the stand, he testified that he was 19 years old at the time of the killing, that he had lived in Tampa for four months, and that he had returned to Chicago a few days before the killing because his friend Frank Jones (one of the witnesses against him) had asked his help in selling a ring. Defendant testified that when he first arrived at Jones' house, Jones said he did not have the ring there but that they could discuss it later. Defendant acknowledged having called Jones' house early on the afternoon of the killing but claimed that he had called from a doughnut shop a considerable distance away, then traveled to the Jones house, where he talked with Jones, his stepfather, and the same friend that had been identified earlier.

Defendant denied having had or seen a gun that day, and he denied threatening anyone with a gun. According to defendant, Jones and Jones' girlfriend had dropped him off at his house between 6 and 7 p.m. and had returned to his house about an hour later but said that they could not take him back to Jones' house because of trouble there. Defendant said that as they drove, Jones produced a ring and gave it to him to sell. Defendant testified that they then went to a house in Lyons, found no one at home, and then drove to a motel in Cicero, where he was dropped off and registered under a false name because of outstanding traffic warrants in Cicero.

Defendant testified further to having called his father from the motel and having been informed that the police were looking for him. He said he then called the police at the number his father gave him but that the policeman who answered told him, "You little bastard, we are going to kill you if we catch you." Defendant said that he then left for Florida, where he sold the ring. He said he later decided to return to Chicago to clear his name and turned himself in to police in the company of Russ Ewing, a television reporter.

Defendant testified on cross-examination that, though such statements were contained in a written document prepared by an assistant State's Attorney and signed by him, he had never told the assistant State's Attorney that he owned a certain pair of sunglasses or that he had ever made a telephone call from the victim's house on the day of the killing. He said that the assistant State's Attorney had tricked him into signing such statements.

A defense witness also testified to having seen two young men lurking behind the victim's garage at about 7:15 p.m. on the evening of the killing and that they then entered a red car that was probably a Pontiac and drove away. The witness testified that 20 minutes later he was approached to help the victim, whom he found lying in her backyard trying to get up.

OPINION

### I. RECALLING WITNESS

Defendant contends that the trial court committed reversible error by refusing to allow his counsel to recall a prosecution witness, Frank Jones, for cross-examination as to bias, interest, or motive to testify that might be based on pendency of an alleged aggravated-battery police investigation involving him. Defendant contends that his counsel were unaware of the allegedly pending investigation until after the witness had left the stand.

■ A defendant may impeach a witness with prior arrests or convictions to show that the witness' testimony might be influenced by interest, bias, or a motive to testify falsely. (*People v. Mason* (1963), 28 Ill. 2d 396, 400-01, 192 N.E.2d 835, 837.) Such cross-examination is a matter of right (*People v. Triplett* (1985), 108 Ill. 2d 463, 475, 485 N.E.2d 9, 15), subject to the trial court's sound discretion to prevent repetitive or unduly harassing questioning (*Triplett*, 108 Ill. 2d at 475, 485 N.E.2d at 15; *People v. Reese* (1984), 121 Ill. App. 3d 977, 987, 460 N.E.2d 446, 453), and impeachment may include charges that have been stricken but that still may be reinstated (*Triplett*, 108 Ill. 2d at 482, 485 N.E.2d at 18). A jury is entitled to know the nature of such charges in order to have complete information that will better enable it to resolve the bias question. (*Reese*, 121 Ill. App. 3d at 988, 460 N.E.2d at 453.) However, reversal of a trial court's decision as to such impeachment cross-examination, including a decision on requested recall for cross-examination after close of the adversary's case, is warranted only where there is an abuse of discretion resulting in manifest prejudice to a defendant. *People v. Smith* (1986), 149 Ill. App. 3d 145, 152, 500 N.E.2d 605, 610; *Reese*, 121 Ill. App. 3d at 988, 460 N.E.2d at 453.

■ In the present case, defendant contends that his trial counsel were informed by the prosecutors on the first day of trial as to a three-week-old arrest of Jones but were then told by the prosecutors that the case had been dismissed. However, the record discloses that the prosecutors told defense counsel, and that defense counsel so ac-

knowledged, merely that, according to the prosecutors' computer, Jones had been arrested but not charged. When defense counsel summarized by saying that "[t]he net result is that the charges then were dismissed or there were no charges placed," the prosecutor replied that "[w]e're not going to even attempt to ask him those questions as to a pending case or if they were dismissed or how they were dismissed." The prosecutors told the court in defense counsel's presence that "[w]e certainly understand that he was [arrested but not charged]. He [defense counsel] can ask about that, never brought to the felony review unit, just not charged. I'm not going to ask him."

When cross-examining Jones, defense counsel quite perfunctorily asked Jones about being arrested for aggravated battery. Defendant contends that not until his counsel had interviewed the alleged battery victim, who could not be reached before Jones' cross-examination, did counsel receive information that the police were actually holding the investigation open against Jones and that a police detective involved in the arrest of defendant was also involved in arresting and releasing Jones. Defendant contends that, had his counsel had such information at the time of cross-examination, they would have inquired further while Jones was on the stand.

After hearing argument, the trial judge stated that the only evidence of a pending case against Jones was hearsay and speculation and that he was denying defendant's motion for a mistrial. However, the judge permitted an evidentiary hearing at which the detective was questioned as to the allegedly pending investigation of Jones. The detective testified that he had not realized Jones would be a witness against defendant until after Jones was arrested and that he had subsequently released Jones because Jones had been hospitalized, he felt Jones would not leave the jurisdiction, the battery case did not seem substantial, and a police officer who was on furlough was in charge of any battery investigation involving Jones. The detective denied that anyone had discussed with or given Jones preferential treatment regarding the battery case in connection with Jones' testifying against defendant in the instant case. The detective stated that the battery case was still open.

After the evidentiary hearing, the trial judge told defense counsel that they had had ample opportunity to cross-examine Jones, and the judge stated that "[w]e do know [Jones] was arrested. The jury knows he was arrested. You brought all of that out. The hanky panky of the police department has been adequately explained. So, let's proceed with the case." In prefacing his denial of the request to recall Jones for further cross-examination, the judge asked:

"What difference would it make?

I think the question is, did the police do something wrong and I feel it's adequately explained. I think the jury is aware of everything that they could become aware of. At this point it is some kind of witch hunt basically bringing out that Frank Jones was arrested on October 5th for aggravated battery. And that is all in the record already.

What more you could bring out, I don't know except put him on the stand and almost get into a question of how, what the victim said and what they didn't say and so forth. It really has nothing to do with this case."

In denying the request to recall Jones, the judge then said: "I am planning on proceeding with the trial. This is the fifth day of trial. I have given you every opportunity and it has been adequately explained to the Court. I don't think there is any hanky panky at all."

Defendant now cites *People v. Triplett* (1985), 108 Ill. 2d 463, 485 N.E.2d 9, and *People v. Barr* (1972), 51 Ill. 2d 50, 280 N.E.2d 708, to support his contention that he should have been allowed to recall Jones. However, *Triplett* involved a complete preclusion from questioning a witness about his juvenile record, and *Barr* involved a prohibition on questioning a witness about criminal charges that might have been dropped in exchange for testimony. (*Triplett*, 108 Ill. 2d at 473, 485 N.E.2d at 14; *Barr*, 51 Ill. 2d at 51-52, 280 N.E.2d at 710.) In the present case, defendant was not prohibited but was afforded full opportunity to cross-examine Jones as to the aggravated-battery arrest while Jones was on the stand. The only prohibition was on defendant's recalling Jones to question him further at a point when the State was about to rest its case in chief, and the trial court has the discretion to prevent repetitive or unduly harassing impeachment cross-examination, under the authority of *Triplett*—the very case cited by defendant. *Triplett*, 108 Ill. 2d at 475, 485 N.E.2d at 15.

In any event, even if refusal to allow a witness to be recalled for impeachment is error, it is harmless error where there is proof beyond reasonable doubt of a defendant's guilt. (*Smith*, 149 Ill. App. 3d at 153, 500 N.E.2d at 611; *People v. Dorsey* (1982), 109 Ill. App. 3d 218, 229, 440 N.E.2d 394, 401-02, *appeal denied* (1982), 92 Ill. 2d 569, *cert. denied* (1983), 460 U.S. 1053, 75 L. Ed. 2d 933, 103 S. Ct. 1503.) Because of the overwhelming evidence of defendant's guilt in the present case, we decline to disturb the trial court's ruling as to recalling Jones for further cross-examination.

## II. PROOF OF ARMED ROBBERY

Defendant contends that there was no evidence of armed robbery except uncorroborated evidence of his statement and that therefore the *corpus delicti* was not established and his armed-robbery conviction should be reversed. Defendant also asks that his murder sentence be vacated and the cause remanded for resentencing, since his murder sentence was based partly on the armed-robbery conviction.

■ The *corpus delicti* cannot be proved by a defendant's confession alone; there must be either some independent evidence or corroborating evidence outside of the confession that tends to establish that a crime occurred. (*People v. Lambert* (1984), 104 Ill. 2d 375, 378-79, 472 N.E.2d 427, 428, citing *People v. Willingham* (1982), 89 Ill. 2d 352, 360, 432 N.E.2d 861, 864.) If the independent or corroborating evidence itself tends to prove that the offense occurred, then if it corroborates the confession it may be considered with the confession to establish the *corpus delicti*. (*Lambert,* 104 Ill. 2d at 379, 472 N.E.2d at 429.) It has been stated that the independent evidence itself need not establish beyond a reasonable doubt that an offense did occur but may merely tend to prove that an offense occurred. (*Lambert,* 104 Ill. 2d at 381-82, 472 N.E.2d at 430, citing *Willingham,* 89 Ill. 2d at 361, 432 N.E.2d at 864 (Simon, J., specially concurring).) It is the jury's function to assess credibility of witnesses and the weight to give their testimony (*People v. Brisbon* (1985), 106 Ill. 2d 342, 360, 478 N.E.2d 402, 410), and a reviewing court will not set aside a criminal conviction unless the evidence is so unsatisfactory as to create a reasonable doubt of guilt (*People v. Adams* (1985), 109 Ill. 2d 102, 115, 485 N.E.2d 339, 342).

■ In the present case, corroborating evidence of defendant's alleged confession to robbery is found in several eyewitnesses' testimony that defendant displayed and offered to sell a ring that resembled what another eyewitness testified was the ring owned by the victim. In addition, the victim's loss of her ring is corroborated by eyewitness testimony that immediately after her death it was missing although she had worn it earlier in the day.

Defendant cites two cases in support of his contention. (*People v. Taylor* (1984), 101 Ill. 2d 508, 463 N.E.2d 705, *cert. denied* (1984), 469 U.S. 866, 83 L. Ed. 2d 140, 105 S. Ct. 209; *People v. Lee* (1986), 151 Ill. App. 3d 510, 502 N.E.2d 399, *appeal denied* (1986), 112 Ill. 2d 564.) However, in *Taylor,* the slain victim's intoxication was a reason to be uncertain as to whether he had already parted with his money, watch, and wallet prior to the alleged robbery attempt; in addition, the defendant made no confession. Accordingly, an attempted robbery

was not proved. (*Taylor,* 101 Ill. 2d at 514-15, 463 N.E.2d at 709.) In *Lee,* though the victim was shot and the defendant confessed to shooting him, the victim did not complain of an armed-robbery attempt, and proof of shooting alone did not corroborate the defendant's confession to attempted armed robbery. In addition, the defendant had also confessed to another attempted armed robbery, yet that alleged victim had denied any such attempt by the person who shot her. *Lee,* 151 Ill. App. 3d at 531-32, 502 N.E.2d at 413.

Hence, neither *Taylor* nor *Lee* is dispositive of the instant case, in which there was evidence of a confession by defendant as well as abundant other evidence of defendant's asportation of the victim's ring. In these circumstances, we hold that there was sufficient evidence to establish the *corpus delicti* of armed robbery and that the evidence was not so unsatisfactory as to create a reasonable doubt of defendant's guilt and warrant disturbing the jury's verdict. *Adams,* 109 Ill. 2d at 115, 485 N.E.2d at 342.

### III. INSTRUCTION ON CIRCUMSTANTIAL EVIDENCE

■ Defendant contends that the trial court committed reversible error by refusing to give the second paragraph of Illinois Pattern Jury Instructions, Criminal, No. 3.02 (2d ed. 1981) (hereinafter IPI Criminal 2d No. 3.02), which read as follows:

> "You should not find the defendant guilty unless the facts or circumstances proved exclude every reasonable theory of innocence."

According to the committee note to the instruction, this paragraph should be given only when the proof of guilt is entirely circumstantial. However, as the State points out, the supreme court held in October 1986 that the second paragraph should no longer be given, whether or not the proof is entirely circumstantial. *People v. Bryant* (1986), 113 Ill. 2d 497, 510, 499 N.E.2d 413, 420.

Because defendant's trial occurred prior to the *Bryant* decision, it would be necessary to determine whether the decision is to be given retroactive application if the evidence in the instant case were entirely circumstantial. However, in the case at bar there was testimony that defendant admitted shooting and robbing the victim, which is direct rather than circumstantial evidence of guilt (*People v. Brown* (1974), 56 Ill. 2d 312, 317-18, 307 N.E.2d 356, 359, *rev'd on other grounds* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254; *People v. Triplett* (1980), 87 Ill. App. 3d 763, 769, 409 N.E.2d 401, 407), and thus in any event precludes giving the second paragraph of IPI Criminal 2d No. 3.02. Therefore, we hold that the trial court commit-

ted no error in refusing to give the instruction paragraph in question.

## IV. SENTENCE

■ Defendant contends that his sentence was excessive because of his potential for rehabilitation and that in imposing it the trial court improperly equated defendant's refusal to abandon his claim of innocence with a lack of remorse.

The sentence imposed was within the statutory limits set by section 9—1(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)) and section 5—8—1(a)(1)(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)(b)). Thus, unless the trial court abused its discretion in imposing the sentence, it should not be disturbed on review. *People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883.

The trial court held a sentencing hearing at which evidence in aggravation and mitigation was heard. On the basis of mitigating evidence, including defendant's age (19 years at the time of the crime) and his work record, the trial court declined to impose a death sentence but chose to sentence him to natural-life imprisonment without parole. In so doing, the court expressly took account of defendant's two prior juvenile delinquency findings on burglary and automobile theft charges and one prior adult burglary conviction, his attitude and character, the lack of hardship on others that his imprisonment would cause, the safety of the public, his lack of remorse, the cold-blooded nature of his crimes, the lack of other mitigating factors, and his poor rehabilitative possibilities in light of the fact that since age 15 he had not been out of trouble for any length of time at all.

Penalties must be determined on the basis of rehabilitative potential and seriousness of the offense, as well as to prevent arbitrary or oppressive treatment of convicts and to restore them to useful citizenship. (Ill. Const. 1970, art. I, §11; Ill. Rev. Stat. 1985, ch. 38, par. 1001—1—2(a); *People v. Crosser* (1983), 117 Ill. App. 3d 24, 31, 452 N.E.2d 857, 864; *People v. Smith* (1980), 91 Ill. App. 3d 438, 449, 414 N.E.2d 1281, 1291-92, *rev'd on other grounds* (1982), 93 Ill. 2d 179, 442 N.E.2d 1325, *cert. denied* (1983), 461 U.S. 937, 77 L. Ed. 2d 312, 103 S. Ct. 2107.) The record must show that the court considered both rehabilitative and seriousness elements. (*People v. La Pointe* (1980), 85 Ill. App. 3d 215, 223, 407 N.E.2d 196, 203, *rev'd on other grounds* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.) But "[t]he requirement that the trial judge set forth his reasons in the record for the particular sentence imposed does not obligate the judge to recite, and assign a value to, each fact presented in evidence at the sentencing

hearing." *People v. Meeks* (1980), 81 Ill. 2d 524, 534, 411 N.E.2d 9, 14; accord *La Pointe*, 88 Ill. 2d at 493, 431 N.E.2d at 349.

In the case at bar, the record affirmatively though briefly shows that the trial court did consider defendant's rehabilitative possibilities, which "certainly do not look good" because defendant had "not been out of trouble for any one time since age of fifteen for any length of time at all" and had been a "bucket of trouble" since age 15.

Defendant cites cases in which sentences were reduced on appeal, but none of them involved a potential death penalty, and they involved mitigating factors that are absent from the present case. Defendant's argument that he has showed a "great potential" for rehabilitation is unpersuasive, as is his contention that he is "very young," comes from a poor or deprived social background, and has "only one prior criminal record" that is not "significant." Although defendant argues that he has a "family support system" and the trial court took note that numerous friends of his family and his mother had testified as to his good qualities, the judge stated that he did not "know why" they had so testified in view of defendant's criminal history.

The trial court's discussion of defendant's rehabilitative potential was brief, and the court disparaged family friends' and defendant's mother's assessments of his character. Nevertheless, we are guided by the rule that the trial judge is normally in a better position to determine punishment than a reviewing court and that a trial court's sentencing decisions are entitled to great deference and weight. (*People v. Ward* (1986), 113 Ill. 2d 516, 525-26, 499 N.E.2d 422, 425, *cert. denied* (1987), 479 U.S. 1096, 94 L. Ed. 2d 168, 107 S. Ct. 1314.) A court need not give greater weight to a defendant's rehabilitative potential than to the seriousness of the offense (*People v. Hayes* (1979), 70 Ill. App. 3d 811, 831, 388 N.E.2d 818, 833, *appeal denied* (1979), 79 Ill. 2d 614), though an abuse of discretion will be found if the sentence imposed is greatly at variance with the purpose and spirit of the law, or greatly disproportionate to the nature of the crime (*Hayes,* 70 Ill. App. 3d at 831, 388 N.E.2d at 833). In accordance with these principles, we do not find that the sentence imposed was excessive.

As for whether the trial court improperly considered defendant's failure to abandon claims of innocence as lack of remorse, during the sentencing hearing the trial judge at no time referred to defendant's claim of innocence as such but merely commented on defendant's "attitude and character," the judge's perception that defendant was "again pointing the finger around and saying it was his fault and it was his fault and you are picking on me," and the "fact that you are still showing that bitterness" by pointing at the assistant State's At-

torneys "like your enemies" and "blaming them for your plight."

These comments by the judge followed a statement by defendant in which, besides expressing sorrow for the victim's death but declining to say he was guilty, he complained that the prosecutor had argued to the jury without knowing defendant or speaking to him for more than five minutes; that the prosecutor wanted to take defendant's life and said he was no good although he was not familiar with even two years of defendant's life; that the witnesses against defendant were "not the understanding citizens that the State made them to be"; that the prosecutors had told defendant's lawyer that they knew Frank Jones was involved but were not going to prosecute him; and that they had prevented the jury from knowing this despite the fact that "this is my life."

Defendant cites two cases in support of his contention, but in each of those cases the sentencing judge had referred specifically to a defendant's denial of guilt as a reason for imposing sentence. (See *People v. Byrd* (1986), 139 Ill. App. 3d 859, 866, 487 N.E.2d 1275, 1280; *People v. Speed* (1984), 129 Ill. App. 3d 348, 351, 472 N.E.2d 572, 574-75.) That is not true of the instant case, and a sentencing court may properly consider a defendant's lack of remorse as distinguished from failure to admit guilt (*Speed*, 129 Ill. App. 3d at 349-50, 472 N.E.2d at 573; *People v. Costello* (1981), 95 Ill. App. 3d 680, 687, 420 N.E.2d 592, 597).

Because in the present case the trial judge clearly placed no reliance on defendant's refusal to admit guilt but found lack of remorse in other aspects of defendant's conduct and declarations, the remorse factor was properly considered, and under *Speed* and *Costello* we conclude that the trial court committed no error in that regard.

### V. CROSS-EXAMINATION

■ Defendant contends that the purpose of cross-examining him as to stealing could only have been to show that he was a bad person with an extensive criminal background. In his support, defendant cites *People v. Spiezio* (1982), 105 Ill. App. 3d 769, 434 N.E.2d 837, *People v. Boose* (1980), 85 Ill. App. 3d 457, 406 N.E.2d 963, *People v. Richardson* (1977), 48 Ill. App. 3d 307, 362 N.E.2d 1104, *People v. Curry* (1975), 25 Ill. App. 3d 637, 323 N.E.2d 778, and *People v. Williams* (1966), 72 Ill. App. 2d 96, 218 N.E.2d 771. However, in none of those cases was the evidence of other crimes offered to impeach a defendant who was testifying. In fact, *Spiezio* noted that, while evidence of other crimes is inadmissible if relevant merely to establish propensity to commit criminal acts, well-recognized exceptions to the

rule against other-crimes evidence exist. *Spiezio*, 105 Ill. App. 3d at 771, 434 N.E.2d at 839.

Nevertheless, the general rule in Illinois is that instances of past misconduct not resulting in conviction may not be inquired into on cross-examination of a defendant for purposes of impeaching credibility (*People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695; *People v. Mason* (1963), 28 Ill. 2d 396, 192 N.E.2d 835; *People v. Kavanaugh* (1980), 85 Ill. App. 3d 783, 786-87, 408 N.E.2d 23, 26-27), though such inquiry may be permissible to show bias, interest, or motive to testify falsely (*People v. Galloway* (1974), 59 Ill. 2d 158, 163, 319 N.E.2d 498, 501; *People v. Mason* (1963), 28 Ill. 2d 396, 400-01, 192 N.E.2d 835, 837).

In the present case, defendant took the stand and professed innocence. He testified that he was almost sure that the ring he said he had agreed to sell for Frank Jones was stolen but that he did not think that selling it would be a crime. Asked whether it bothered him to break the law, defendant answered, "Well, in some ways it does." The following exchange later occurred between prosecutor and defendant:

"Q. [Assistant State's Attorney]: You're into stealing, aren't you?

A. [Defendant]: I am not into it.

Q. Well, you do it, don't you?

A. I may take something here and there, yeah."

The prosecutor then sought to establish through questioning defendant that on the night he was arrested he had told an assistant State's Attorney that he might steal something but not with a gun. Over defense objection that "the prosecution cannot cross examine a criminal defendant on a criminal record," the trial judge agreed with the prosecutor's contention that the questions would go to defendant's credibility and ruled that "[h]ere is a man that said on the record that I have sold jewelry for Frank before. I knew that the ring was stolen. I don't think that was a crime. I have done it before. Overruled."

Later, in response to the question, "Well, you take a person's property, don't you, that doesn't belong to you, don't you?" defendant answered after defense counsel's objection was overruled, "Maybe a cigarette or so I would take, yes." The prosecutor then questioned him about the prior statement to the assistant State's Attorney; defendant answered, "Yes, sir, I said that." This colloquy ensued:

"Q. Well, were you referring to cigarettes at that time?

A. I was referring to I am not an angel.

Q. Were you referring to stealing cigarettes at that time?

A. I was referring to I am not an angel.

Q. I will ask one more time.

Were you referring to stealing cigarettes, yes or no?

A. I am telling you what I was referring to.

* * *

THE COURT: Answer that question.

A. Yes.

Q. [Assistant State's Attorney]: And that's all you were referring to is cigarettes?

A. Not all.

Q. What else were you referring to?

A. I was referring to that I was not an angel, that I am not innocent, that I would, you know, I am not a guy that walks the earth and don't do anything.

* * *

Q. Could we be a little more specific, Mr. Morando?

A. Nothing. There was nothing in specific."

Generally, because of the prejudice it would create, a defendant cannot be questioned about other crimes for which he is not on trial. (*People v. Carradine* (1983), 114 Ill. App. 3d 82, 87, 448 N.E.2d 569, 573.) But "[i]t is * * * clear that a prosecutor may cross-examine regarding any other *convictions* when a witness himself has 'opened the door' by testifying on direct examination regarding some aspect of his criminal record." (Emphasis added.) (*Carradine,* 114 Ill. App. 3d at 87, 448 N.E.2d at 573.) In addition, where a witness' credibility is crucial, the trial court should permit the parties wide latitude in impeaching and rehabilitating the witness' credibility so that the jury can gain access to all necessary information and impressions in order to evaluate credibility. (*People v. Fairbanks* (1986), 141 Ill. App. 3d 909, 915, 491 N.E.2d 74, 78.) Matters of impeachment are within the trial court's sound discretion, and a reviewing court should not interfere unless there has been a clear abuse of discretion resulting in manifest prejudice to the defendant. *People v. Collins* (1985), 106 Ill. 2d 237, 269, 478 N.E.2d 267, 281, *cert. denied* (1985), 474 U.S. 935, 88 L. Ed. 2d 274, 106 S. Ct. 267; *People v. Baggett* (1983), 115 Ill. App. 3d 924, 934, 450 N.E.2d 913, 920, *appeal denied* (1983), 96 Ill. 2d 542, *cert. denied* (1984), 465 U.S. 1032, 79 L. Ed. 2d 698, 104 S. Ct. 1298.

In the case at bar, defendant had testified on direct examination that he registered in a motel under a false name because of outstanding warrants against him for traffic violations, he left Illinois while knowing that he was wanted by the police, and he was almost positive

the ring was "hot" that he said he had agreed to sell for Frank Jones. Defendant had put his credibility in issue by taking the stand to deny his guilt, and from his own mouth had already come damaging admissions of dishonest or arguably criminal conduct.

Even so, after this, the State sought to show that he had previously acknowledged unarmed theft or robbery as part of his attempt to deny guilt of armed robbery and murder. The State has offered no coherent explanation why showing the manner in which defendant sought to deny his guilt might be probative enough to outweigh the general evidentiary rule against using instances of prior misconduct to demonstrate criminal propensity or to impugn credibility or other aspects of character. The most logical inference from such a showing would be that, because defendant had acknowledged unarmed robbery, it was only a step to conclude that he had also committed armed robbery—and this is the type of prejudicial inference that the evidentiary rule seeks to prevent a jury from drawing. Moreover, if cross-examining defendant as to these prejudicial contents of his alleged statement to police was impermissible, *a fortiori* the more generalized cross-examination as to whether he was "into stealing" or would "take a person's property" was improper.

However, considering the overwhelming evidence against defendant and his own direct testimony of dishonest or criminal behavior close in time and space to the crime charged, cross-examination as to unspecified acts of stealing in an effort to test his credibility, even though erroneously permitted, could not materially have contributed to his conviction, nor could its absence have resulted in a different verdict. Thus, we hold that any error in permitting such cross-examination was harmless.

### VI. PHOTOGRAPHS

■ Defendant contends that eight "especially gruesome" photographs of the deceased victim and her clothing were improperly admitted into evidence over his objection, thereby denying him a fair trial by unfairly prejudicing the jury. In fact, at trial defense counsel disclaimed any objection to the photographs' admission into evidence but objected only to their being taken to the jury room. Thus, we consider the latter question to be the real issue on appeal.

Though defendant concedes that one (but only one) photograph showing the victim's wound would have been corroborative of testimony as to any issue in the case, the State argues that all the photographs were probative as to the victim's wounds and the manner in which they were inflicted and that, as such, their probative value out-

weighed any prejudicial effect.

While defendant received leave of this court to supplement the record by including the photographs in question, no supplemental record has been filed, and the photographs themselves are not available for review. Nevertheless, it is within the sound discretion of the trial court to allow exhibits to be taken to the jury room (*People v. Montague* (1986), 149 Ill. App. 3d 332, 343, 500 N.E.2d 592, 599), and the trial court found that the photographs were not gory but made the nature and manner of the victim's wounds more understandable. As such, they would be admissible and properly taken to the jury room under *Montague* and *People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238. Because pictures were probative of the cause of death, amount of force used, and the bloody condition of the crime scene, admission of two photographs showing amputated genital organs that had been inserted into the victim's mouth was held not to have been an abuse of discretion in *Lindgren.* (79 Ill. 2d at 143-44, 402 N.E.2d at 245.) Two photographs showing the cause of death, use of force, and location and manner of a gunshot wound were held to have been properly admitted in the discretion of the trial court in *Montague.* (149 Ill. App. 3d at 344, 500 N.E.2d at 599.)

The record in the instant case reveals that, after hearing arguments of counsel, the trial court balanced the photographs' potentially prejudicial nature against their probative value in deciding to send them to the jury. They helped to establish both the manner in which a single shot had twice entered and exited from the victim's body and the fact that it had been inflicted at such close range as to leave soot deposits.

Though defendant cites *People v. Garlick* (1977), 46 Ill. App. 3d 216, 360 N.E.2d 1121, *appeal denied* (1977), 66 Ill. 2d 626, *cert. denied* (1977), 434 U.S. 988, 54 L. Ed. 2d 484, 98 S. Ct. 620, in support of his contention that the photographs should not have been admitted, the defendant in *Garlick* had admitted the offense but pleaded insanity, so that in the view of the appellate court panel's majority the gruesome photograph of a massive head wound was not probative of any material issue, the cause of death was not at issue, and the medical testimony had been wholly understandable. (*Garlick,* 46 Ill. App. 3d at 224, 360 N.E.2d at 1127.) In the case at bar, however, defendant did not admit committing the offense, the trial court found that the photographs were not gory, and the circumstances of death were matters to be proved by the State even though not disputed by defendant except as to his involvement. Thus, *Garlick* is not dispositive.

Defendant also cites *People v. Foster* (1979), 76 Ill. 2d 365, 392 N.E.2d 6, in his support, but the court in that case upheld the trial court's exercise of discretion to admit four especially gruesome photographs. (*Foster*, 76 Ill. 2d at 372, 375, 392 N.E.2d at 10, 11.) Though in the present case there is clearer nonphotographic evidence of the time and manner of death than in *Foster*, that case involved photographs far gorier than those in the case at bar, and *Foster* does not stand for any limitation on a trial court's discretion in regard to admitting photographs probative of an issue in the case.

In the present case, because the trial judge carefully considered the question and found the photographs not to be gory, and because they were probative of the manner and cause of death, we hold that no abuse of the trial court's discretion in sending the photographs to the jury has been shown.

### VII. CLOSING ARGUMENT

██ █ Defendant contends that the State's closing argument contained improprieties that singly or cumulatively constituted reversible error, in that the argument (1) implied that defense counsel fabricated the defense; (2) commented on defendant's failure to call a witness; (3) misstated the function of the jury as a nonpartisan fact finder that presumes a defendant innocent until proved guilty; and (4) commented on the victim so as to inflame jury sympathy for her and hatred for defendant.

A prosecutor has wide latitude in closing argument. (*People v. Neumann* (1986), 148 Ill. App. 3d 362, 373-74, 499 N.E.2d 487, 494, *appeal denied* (1987), 113 Ill. 2d 581, *cert. denied* (1987), 481 U.S. 1051, 95 L. Ed. 2d 840, 107 S. Ct. 2184.) The prosecutor has a right to comment on the evidence and draw reasonable inferences therefrom. (*People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 322, 379 N.E.2d 847, 853.) The prosecutor also may make comments in rebuttal argument that are invited by comments made in defense counsel's own argument. (*People v. Sutton* (1977), 45 Ill. App. 3d 739, 742, 359 N.E.2d 1132, 1134, *appeal denied* (1977), 66 Ill. 2d 627.) Even if a prosecutor's comments are improper, they will constitute reversible error only if they result in substantial prejudice to the defendant or constitute a material factor in his conviction; it is necessary to consider whether the verdict would have been different if the comments had not been made. *People v. Baptist* (1979), 76 Ill. 2d 19, 29, 389 N.E.2d 1200, 1205; *People v. Witted* (1979), 79 Ill. App. 3d 156, 165, 398 N.E.2d 68, 76.

### (1) FABRICATION OF DEFENSE

Defendant contends that the State clearly implied that his counsel fabricated his defense when the State, in rebuttal, made the following remarks:

> "You pick up a case like this and you work on it for months and you learn it inside and out and you learn what all of the witnesses are going to say, what they have said to the police. You learn all of the physical evidence and you get a case like this and there is all this evidence and you think, what is the Defense possibly going to be."

The remarks were followed by the statement, "Well, now we know. We are talking about the great conspiracy. All of these witnesses got together and lied and got it all together and conspired to lie just to get him."

Initially, we note that defendant failed to object to these remarks when they were made or in his subsequent motion for a mistrial, although he eventually raised them in his motion for a new trial. Though failure to make contemporaneous objection normally results in waiver (see *People v. Jackson* (1986), 145 Ill. App. 3d 626, 641, 495 N.E.2d 1207, 1219) except as to plain error (107 Ill. 2d R. 615(a)), the remarks were in any event merely permissible comment on the evidence and a reply to defense counsel's argument that had suggested a conspiracy of witnesses against defendant.

While it is improper for a prosecutor, without evidence, to suggest that defense counsel fabricated a defense theory (*People v. Emerson* (1983), 97 Ill. 2d 487, 497, 455 N.E.2d 41, 45), the State's comments in the instant case did not descend to that level. They merely expressed incredulity at the inference suggested by the prior defense argument and, unlike the objectionable argument discussed in *Emerson,* did not accuse defense counsel of having laid down a smokescreen of lies, state defense attorneys tried to "dirty up the victim" to distract the jury from the crime, or assert that defense attorneys wanted to walk defendants out of court and put them back on the street. (See *Emerson,* 97 Ill. 2d at 497-98, 455 N.E.2d at 45.) Nor did the State's comments resemble those discussed in two other cases cited by defendant, *People v. Clark* (1983), 114 Ill. App. 3d 252, 448 N.E.2d 926, and *People v. Witted* (1979), 79 Ill. App. 3d 156, 398 N.E.2d 68. Thus, we hold that defendant's contention regarding implied accusations against defense counsel is without merit.

### (2) FAILURE TO CALL WITNESS

Defendant contends that, over objection, the State improperly com-

mented on his failure to call a witness by stating that "[e]veryone testified except defendant's brother," thereby creating the impression that defendant was so guilty that his own brother would not testify for him. Defendant contends that the brother was equally available to the State as a witness and that accordingly the statement was improper.

In fuller form and more accurately, the State's remarks were as follows:

"Everything that Laura tells you and Frank tells you and Jimmy tells you is corroborated by the people on the porch. And everybody on that porch testified except the defendant's brother."

Although it is normally improper for the prosecution to comment on a defendant's failure to call a witness who is equally available to the prosecution (*People v. Munday* (1917), 280 Ill. 32, 42, 117 N.E. 286, 292, *cert. denied* (1920), 254 U.S. 638, 65 L. Ed. 451, 41 S. Ct. 12; *People v. Starks* (1983), 116 Ill. App. 3d 384, 393, 451 N.E.2d 1298, 1304-05, *appeal denied* (1983), 96 Ill. 2d 548), such comment is not improper if the witness is an alibi witness or if the witness is not equally available (*People v. Adams* (1985), 109 Ill. 2d 102, 120-21, 485 N.E.2d 339, 345). The crux of the issue is whether defendant's brother was equally available to the State.

The State argues that presumably the brother would be hostile and thus unavailable as a witness because he would not testify on the State's behalf. The State also concurs with the trial judge, who stated: "Obviously, the control of that particular witness would be the defendant."

In regard to availability, the relationship between the party and the witness has been viewed as a factor in determining whether an unfavorable inference may be drawn from failure to call the witness, and a sibling relationship has justified drawing such an inference. (See C. Torcia, Wharton's Criminal Evidence §89 (14th ed. 1985); Annotation, *Relationship Between Party & Witness as Giving Rise to or Affecting Presumption or Inference from Failure To Produce or Examine Witness,* 5 A.L.R.2d 893 (1949).) "[W]hether a person is to be regarded as peculiarly within the control of one party may depend as much on his relationship to that party as on his physical availability. *** [P]racticality is the touchstone in this situation. There may be a relationship of such description (legal, personal, practical or perhaps even social) between a prospective witness and one party that would in a pragmatic sense make his testimony unavailable to the opposing party regardless of physical availability." *United States v. Blakemore* (6th Cir. 1973), 489 F.2d 193, 195 & n.4 (criminal case); accord

*Yumich v. Cotter* (7th Cir. 1971), 452 F.2d 59, 64, *cert. denied* (1973), 410 U.S. 908, 35 L. Ed. 2d 269, 93 S. Ct. 955 (civil case).

In any event, despite the rule against commenting on a defendant's failure to call a witness, defense counsel generally may not invite or provoke such a response and then claim prejudice. (See *People v. Smith* (1982), 111 Ill. App. 3d 895, 907, 444 N.E.2d 801, 809, *appeal denied* (1983), 93 Ill. 2d 547.) Furthermore, an instruction, as here, that closing arguments are not evidence and that any statements therein not based on evidence should be disregarded tends to cure possible prejudice. (See *Smith,* 111 Ill. App. 3d at 908, 444 N.E.2d at 809.) Finally, where overwhelming evidence of a defendant's guilt exists, any possibility of prejudice to the defendant from improper comment on failure to call a witness may be nullified and a finding of reversible error precluded. See *People v. Calhoun* (1984), 126 Ill. App. 3d 727, 739, 467 N.E.2d 1037, 1045.

In the present case, besides the sibling relationship that arguably made the brother practically unavailable to the prosecution, reference to the failure of defendant's brother to testify was momentary and not even as lingering as in *Calhoun,* where the prosecutor had specifically asked the jury why the defendant had not brought in four named witnesses. (*Calhoun,* 126 Ill. App. 3d at 738, 467 N.E.2d at 923.) The reference certainly did not take the dimensions of the prosecutor's extensive comment in *Starks.* (*Starks,* 116 Ill. App. 3d at 392-93, 451 N.E.2d at 1304.) Furthermore, it can be considered as having been invited by defense counsel's implication that witnesses had conspired against defendant.

In addition, the State's reference to the brother's failure to testify was as susceptible of an interpretation favorable to defendant (*i.e.,* that the brother would not have corroborated prosecution testimony) as of the unfavorable interpretation now urged by defendant.

But most importantly, given the passing nature of the reference and the overwhelming evidence against defendant from a plethora of witnesses, we conclude that no substantial prejudice to defendant resulted from the State's remarks during closing argument and that the jury would not have returned a different verdict if the remarks had not been made. (*Calhoun,* 126 Ill. App. 3d at 739, 467 N.E.2d at 923.) Thus, we hold that any error in this part of the State's closing argument was harmless.

### (3) MISSTATING JURY'S FUNCTION

Defendant's next, somewhat fragmentary contention is that, over objection, the State misstated the jury's function by telling the jury

that "you can tell the community by your verdict" and that allowance of such statement constituted reversible error as in *People v. Thomas* (1986), 146 Ill. App. 3d 1087, 497 N.E.2d 803, *appeal denied* (1986), 113 Ill. 2d 568.

According to the record, the State's actual remarks to the jury were as follows:

"MR. PALMER [Assistant State's Attorney]:

* * *

The question is, is that what we have come to? Have we come to the point where you can't wear—you can't wear your possessions on your body, on your fingers and be seen in public, because if you do, someone will see you. Mark Morando will see you and he will come to your house and he will ask to use your telephone and he will check you out. And then he will come back later and kill you and take your diamond ring? Is that what we have come to? No. That's not what we have come to.

You can tell the community that that is not what we have come to.

MR. MORRISSEY [defense counsel]: Objection.

THE COURT: Overruled.

MR. PALMER: Your message must be that if you do that, if you commit those acts, the law will chase you down relentlessly to Florida or to wherever you go and we will bring you in and you will be tried and you will be convicted of murder and armed robbery."

In *Thomas,* which defendant cites, the prosecutor had told the jury that, because the victim had unexpectedly testified adversely to the State, because a witness was afraid of the defendant's family, and because no one from the witness' family was in court, "[t]here's nobody here for the [State], just you." (*Thomas,* 146 Ill. App. 3d at 1089, 497 N.E.2d at 804.) The court found plain error in such diminution of the presumption of innocence and reversed the conviction, but it acknowledged that "a prosecutor may, in closing argument, 'dwell on the evil results of crime and urge a fearless administration of the law' (*People v. Wright* (1963), 27 Ill. 2d 497, 500-01, 190 N.E.2d 287, 289 [, *cert. denied* (1963), 375 U.S. 925, 11 L. Ed. 2d 167, 84 S. Ct. 271]; *People v. Cukojevic* (1981), 103 Ill. App. 3d 711, 431 N.E.2d 1154[, *appeal denied* (1982), 91 Ill. 2d 561])." *Thomas,* 146 Ill. App. 3d at 1089, 497 N.E.2d at 804.

In *Cukojevic,* it was not improper for the prosecutor to tell the jury that "[t]he buck stops right here. *** You people of the community have to do something about this if you want this type of crime to

stop." (*Cukojevic,* 103 Ill. App. 3d at 721, 431 N.E.2d at 1162, citing *Wright,* 27 Ill. 2d at 500-01, 190 N.E.2d at 289, and *People v. Rehbein* (1977), 54 Ill. App. 3d 93, 101, 369 N.E.2d 190, 196, *aff'd* (1978), 74 Ill. 2d 435, 386 N.E.2d 39, *cert. denied* (1979), 442 U.S. 919, 61 L. Ed. 2d 287, 99 S. Ct. 2843.) In *Wright,* it was not improper for the prosecutor to denounce the defendant and ask the jurors whether they were going to let murderers walk the streets so they could kill someone else. (*Wright,* 27 Ill. 2d at 500-01, 190 N.E.2d at 289, citing *People v. Moore* (1956), 9 Ill. 2d 224, 137 N.E.2d 246 (and cases therein cited); *People v. Halteman* (1956), 10 Ill. 2d 74, 139 N.E.2d 286.) In *Rehbein,* the court affirmed a conviction despite the fact that the prosecutor had told the jurors that they could do something about the crime wave by finding the defendant guilty. *Rehbein,* 54 Ill. App. 3d at 101, 369 N.E.2d at 196.

As the State contends, the prosecution remarks in the case at bar are not equivalent to those condemned in *Thomas* but rather are very similar to those found permissible in the other cases just cited. Therefore, we hold that the trial court did not err in permitting them.

### (4) SYMPATHY FOR THE VICTIM

Defendant next contends that the State distracted the jurors from the real issues and inflamed their sympathy for the victim and hatred for defendant by the following statements in closing argument (here excerpted more fully than is set forth by defendant):

"MR. PALMER [Assistant State's Attorney]:

\* \* \*

\*\*\* Irene Dominick, a fifty-seven year old woman, lives here twenty-nine years. Doesn't she deserve to live out the rest of her life in peace and quiet?

MR. MORRISSEY [Defense Counsel]: Objection, objection.

THE COURT: Sustained.

\* \* \*

MR. PALMER:

\* \* \*

\*\*\* He didn't just rob that woman of her ring. He robbed that woman of the fifty-seven years that she had invested in life.

MR. MORRISSEY: Objection.

MR. PALMER: She had the right—

THE COURT: Overruled.

MR. PALMER: —(continuing) right to finish what she had started."

Defendant contends that these comments were identical to statements that have been held improper regarding victims' survivors, citing *People v. Littlejohn* (1986), 144 Ill. App. 3d 813, 494 N.E.2d 677, *appeal denied* (1986), 112 Ill. 2d 587, *People v. Starks* (1983), 116 Ill. App. 3d 384, 451 N.E.2d 1298, *appeal denied* (1983), 96 Ill. 2d 548, and *People v. McLean* (1971), 2 Ill. App. 3d 307, 276 N.E.2d 72. The State denies that the comments were identical to remarks about survivors and contends that the comments were proper because the prosecutor is entitled to comment on the deceased (*People v. Eckles* (1980), 83 Ill. App. 3d 292, 301, 404 N.E.2d 358, 365; see *People v. Gonzales* (1968), 40 Ill. 2d 233, 242, 239 N.E.2d 783, 789) and to delve into the evil results of crime (*Wright*, 27 Ill. 2d at 500-01, 190 N.E.2d at 289; *Cukojevic*, 103 Ill. App. 3d at 721, 431 N.E.2d at 1162), and that, even if improper any error was cured as to the first such comment by the court's sustaining defendant's objection.

In the case at bar, the State's references to the crime's effect on its victim were comparatively brief and surely permissible under *Wright* and *Eckles* as depicting the crime's evil effects. (*Wright*, 27 Ill. 2d at 500-01, 190 N.E.2d at 289; *Eckles*, 83 Ill. App. 3d at 301, 404 N.E.2d at 365.) Defendant's citation of *Starks* and *McLean* is inapposite because here the State did not mention survivors. In contrast to *Littlejohn*, whether defendant had killed the victim was directly in issue here, and there was no express bid for the jury's sympathy with the victim and survivors as in *McLean*. Moreover, the trial court sustained an objection to the lengthier of the two brief references in the case at bar.

Though references to a deceased victim's family and the nature of the killing may have been unduly emotional, they were not unsupported by the record and taken as a whole did not prejudice the defendant in *Gonzales*. (40 Ill. 2d at 242, 239 N.E.2d at 789.) We find that the remarks about the victim in the case at bar, even if they constituted error, when taken in context did not prejudice defendant.

In addition, whether viewed singly or cumulatively, we find that the alleged errors at closing argument were not a material factor in defendant's conviction, nor would the result have been different in their absence, considering the overwhelming evidence against defendant. (*People v. Neumann* (1986), 148 Ill. App. 3d 362, 375, 499 N.E.2d 487, 495, *appeal denied* (1987), 113 Ill. 2d 581, *cert. denied* (1987), 481 U.S. 1051, 95 L. Ed. 2d 840, 107 S. Ct. 2184.) Defendant's citations to *People v. Whitlow* (1982), 89 Ill. 2d 322, 433 N.E.2d 629, *cert. denied sub nom. Gibson v. Illinois* (1982), 459 U.S. 830, 74 L. Ed. 2d 68, 103 S. Ct. 68, and *People v. Weinger* (1981), 101 Ill. App. 3d 857,

428 N.E.2d 924, for a contrary conclusion are unpersuasive, since those cases involved persistent prosecutorial errors of an egregious nature. *Whitlow,* 89 Ill. 2d at 341, 433 N.E.2d at 638; *Weinger,* 101 Ill. App. 3d at 871-72, 428 N.E.2d at 934-35.

CONCLUSION

In view of the foregoing, we must affirm the judgment and sentence of the circuit court of Cook County.

Affirmed.

HARTMAN, P.J., and BILANDIC, J., concur.