CASEY CHEW, Plaintiff-Appellee, *v.* WEBSTER GRAHAM, Defendant-Appellant.

First District (1st Division)   No. 83—1560

Opinion filed March 12, 1984.

Beerman, Swerdlove, Woloshin, Barezky & Berkson, of Chicago (Alvin R. Becker, Susan L. Brody, and Howard A. London, of counsel), for appellant.

Coghlan, Joyce, Nellis & Kelly, of Chicago (Thomas C. Nyhan and Anita M. D'Arcy, of counsel), for appellee.

JUSTICE GOLDBERG delivered the opinion of the court:

After an automobile collision at an intersection, Casey Chew (plaintiff) brought this action against Webster Graham (defendant). A jury found defendant was 97% negligent and awarded damages to plaintiff. Defendant appeals.

Plaintiff was driving west on 76th Street. As he approached the intersection with Morgan Street, he drove approximately 20 to 25 miles per hour. He saw his traffic light was red. He braked and slowed to 15 miles per hour. The light changed to green. He increased speed up to 20 miles per hour and proceeded through the intersection. He saw another automobile coming south on Morgan. He observed that this car was not going to slow down or stop. Plaintiff applied his brakes, blew his horn and stopped in the intersection. The other car collided with plaintiff's bumper and the front of his car.

Plaintiff called James Gordon. He testified he was driving north on Morgan and made a right turn to go east on 76th Street. He saw defendant's car proceeding south on Morgan. As Gordon proceeded on

his turn, his traffic light changed from green to yellow and then to red as he turned. Gordon looked through his rearview mirror. He saw defendant's car coming through the intersection. He heard brakes. He saw defendant's car hit that of plaintiff. He stated that at the time of impact the light was green for westbound traffic on 76th Street. Gordon saw plaintiff's car spinning about and saw defendant's car cross the street to strike a fireplug on the southwest corner.

Gordon was fully cross-examined by counsel for defendant. No restriction was imposed by the trial court. When specifically asked by defense counsel about the change in his light as he turned, Gordon specified, "I was turning on the yellow."

Defendant called Jerry Williamson. Williamson was walking north on the west side of Morgan. He intended to cross 76th Street. The traffic light was green for traffic on Morgan. The pedestrian "Walk" signal was on. The witness saw plaintiff driving west on 76th Street when plaintiff was a "couple" of car lengths from the intersection. Plaintiff was driving at a speed in excess of 30 miles per hour. The witness also saw defendant's car going south at 15 to 20 miles per hour. Plaintiff's car struck defendant's car broadside. Plaintiff's car spun around and stopped in the middle of the intersection. Defendant's car struck the fire hydrant on the southwest corner.

Williamson testified on cross-examination he recognized the defendant as a customer. Williamson works in a store where defendant bought sandwiches. Williamson was being paid for his "time" in court. He spoke to defendant concerning this accident several times. He went to the office of defendant's attorney with defendant and signed a statement in defendant's presence. At the time of the collision, Williamson was south of his home which was six or seven houses south of the intersection. He conceded his written statement which said he saw defendant's car spin about in the center of the intersection was "wrong."

Defendant testified he was traveling south on Morgan about 100 feet from the traffic signal. This light was green for him. He focused his eyes on this light on the northwest corner. He looked to see if any traffic was heading west. He did not see plaintiff's car prior to the impact. Plaintiff's car collided with the driver's side of defendant's car.

Defendant's attorney told the trial court he had one more witness who would come in "tomorrow morning." The conference on instructions was completed. Next morning, James Gordon appeared in the courtroom pursuant to a subpoena by defendant. Defendant attempted to call Gordon for additional examination. After hearing argument of counsel, the trial court denied additional testimony from Gordon. However, the trial court permitted examination of the witness by defend-

ant's counsel out of the presence of the jury, limited to new material. Counsel for defendant questioned Gordon regarding the color of the traffic light as Gordon made his right turn eastbound. Gordon testified the light was changing as he made his turn and was green for plaintiff when Gordon's turn was completed. Counsel for defendant had a prior written statement given by Gordon which he attempted to use for impeachment. In this statement, Gordon stated the light was changing as he cleared his turn. The trial court expressed the opinion that this statement was not impeaching. The case then proceeded to final argument and verdict.

The only contention raised in defendant's brief is that the trial court erred in refusing to permit defendant to recall the witness Gordon for further cross-examination. This witness was originally called by counsel for plaintiff and testified on direct examination. He was fully cross-examined by counsel for the defendant at that time and dismissed. The request for additional examination of this witness by defendant came, in effect, after the close of testimony but before defendant had formally rested. Counsel for defendant desired to recall Gordon as his witness but only for the purpose of impeaching him.

In our opinion, the legal principles governing this situation are clear and established. The rule is well stated in *Haas v. Tomaszek* (1978), 56 Ill. App. 3d 656, 660, 371 N.E.2d 1240:

"It is within the discretion of the trial court to permit or deny a party's request to recall a witness for further cross-examination, and the trial court's determination in this regard will not be disturbed unless there has been an abuse of discretion. [Citation]."

In this regard, *Haas* cites *Schutt v. Terminal Railroad Association* (1967), 79 Ill. 2d 69, 76, 223 N.E.2d 264. *Schutt* is also cited for the identical conclusion in *Rogus v. Continental Illinois National Bank & Trust Co.* (1972), 4 Ill. App. 3d 557, 560, 281 N.E.2d 346.

As a matter of historical information, it is interesting to note that this principle regarding the authority of the trial court to conduct the trial was strongly established by the supreme court many, many years ago. In *Cal Hirsch & Sons Iron & Rail Co. v. Coleman* (1907), 227 Ill. 149, 154, 81 N.E. 21, the rule was stated that the right to recall a witness for additional cross-examination "is largely within the sound discretion of the trial court, and can only be reviewed when it is apparent that the refusal was an abuse of this discretionary power."

We find the same principle stated with reference to the conduct of cross-examination in a case involving a workmen's compensation claim. In *Johns-Manville Products Corp. v. Industrial Com.* (1979), 78 Ill. 2d

171, 181, 399 N.E.2d 606, the supreme court stated, "[t]he scope and extent of cross-examination and re-cross-examination are within the discretion of the court." The identical rule applies in criminal cases. A reviewing court will not interfere with rulings of the trial court regarding the latitude to be allowed in cross-examination without a clear abuse of discretion "resulting in manifest prejudice to the defendant ***." (People v. Kline (1982), 92 Ill. 2d 490, 504, 442 N.E.2d 154.) The rationale of this strong principle of law needs no elucidation. If the trial court did not have firm control over the extent and scope of cross-examination, legal chaos would be the inevitable result.

Defendant contends there was a breach of discretion here because defendant should have been permitted to introduce the written statement by the witness Gordon. Defendant relies strongly upon the recent change in Supreme Court Rule 238 (87 Ill. 2d R. 238). Effective April 1, 1982, the supreme court amended that rule which presently reads as follows:

"*Rule 238. Impeachment of Witnesses;*
   *Hostile Witnesses*

   (a) The credibility of a witness may be attacked by any party, including the party calling him.

   (b) If the court determines that a witness is hostile or unwilling, he may be examined by the party calling him as if under cross-examination."

It readily appears from this change that the purpose of this rule was to liberalize the practice so as to permit a party to cross-examine and discredit his own witness if required by the exigencies of trial. The general purpose of the amendment of the rule was to eliminate the last vestiges of the rule of practice which prevented a party from impeaching his own witness. The theory was that by calling the witness the party had "vouched" for his credibility. An excellent exposition of the theory behind this rule recently appeared in a legal publication. See McDonnell, *Impeachment Of One's Own Witness: An Overdue Change In Illinois Trial Practice*, 71 Ill. B.J. 420 (1983).

Manifestly that amendment is completely immaterial in the case at bar. The witness Gordon was never called during the trial as a witness for the defendant. He was called and examined by plaintiff and tendered to defendant for cross-examination. Defendant always had the full right, even the duty, to cross-examine Gordon and to discredit and impeach him or to attack his testimony in any legal manner.

During cross-examination, counsel for defendant had possession of the out-of-court statement signed by the witness. Counsel had every right to confront the witness with this statement if it was contrary to

his testimony. But, counsel for defendant never used the out-of-court statement but depended upon other cross-examination to further his cause. We see nothing further in this contention. It is apparent that the trial court was never even called upon to exercise discretion with reference to any attempted discreditation or impeachment of the witness Gordon.

In addition, we find no discrepancy of any kind in Gordon's testimony. Gordon testified repeatedly regarding this narrow issue:

(1) He saw the traffic light for northbound traffic. In cross-examination he stated, "I was turning on the yellow."

(2) Again in cross-examination he stated as he was making the turn, "the light changed; as I was making my turn he [plaintiff] proceeded to go west."

(3) Also, during cross-examination the witness stated, "The light was changing to green for the Cadillac [plaintiff] going west; he proceeded to cross the street."

(4) In the written statement Gordon said, "The Cadillac had the green light because the light was changing as I cleared my turn."

(5) On his direct examination Gordon testified, "The light is changing; I make the right-hand turn. *** As I made my turn it changed to red for north and southbound traffic."

(6) On direct examination he also testified that "at the time of the collision the light was green for westbound traffic ***."

Thus it seems to us as a practical matter that both sides examined the witness fully on this detail. The testimony of this witness was completely presented and was all before the jury for their use.

Defendant admits he did not intend to call Gordon to elicit substantive evidence but only to impeach his earlier testimony. The offer of proof made by defendant out of the presence of the jury does not in any manner change the situation. The witness repeatedly stated that the light was yellow as he proceeded to make the turn but that it changed to green. Actually it would be impossible for any person to be more accurate. The process of "making the turn" took some time and the precise and exact condition of the light during the turn was impossible of completely accurate delineation.

The judgment appealed from is accordingly affirmed.

Judgment affirmed.

BUCKLEY, P.J., and CAMPBELL, J., concur.