THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LEVI SMITH, Defendant-Appellant.
First District (1st Division)   No. 85—0833

Opinion filed November 3, 1986.

Marshall A. Levin and Ronald S. Rodgers, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Paula M. Carstensen, and William J. Hielscher, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE QUINLAN delivered the opinion of the court:

The defendant, Levi Smith, was charged by indictment with attempted murder, two counts of aggravated battery, and two counts of armed violence stemming from the shooting of Arthur Irby on February 17, 1984. Prior to trial, the State nol-prossed the two counts of armed violence. Following a jury trial in the circuit court of Cook County, the defendant was found guilty of attempted murder and aggravated battery and sentenced to 15 years' imprisonment.

On appeal, the defendant presents the following issues for review: (1) whether the defendant was proved guilty beyond a reasonable doubt; (2) whether the trial court erred in its refusal to allow the defendant to recall the victim after the State had rested its case; (3) whether the instructions given to the jury accurately stated the law to sustain a charge of attempted murder; and (4) whether the jury was properly instructed as to the evidence of other crimes.

For the reasons set forth below, we affirm the defendant's conviction.

At the trial, the defendant's ex-wife, Charlene Smith, testified on behalf of the State as to the events leading up to the incident on February 17, 1984. Mrs. Smith stated that she had been divorced from the defendant in 1980 and that she began dating the victim, Arthur Irby, in May 1983. On the afternoon of February 9, 1984, Irby was visiting Mrs. Smith at her home, located at 5706 West Superior Street in Chicago. At approximately 3:30 p.m., Mrs. Smith drove Irby to his home, located at the corner of Madison and Washtenaw streets in Chicago. She dropped Irby off in front of his house and then began to drive back home.

Mrs. Smith stated that when she stopped for a red light at the intersection of Jackson and Hamlin, her car was suddenly "bumped" from behind. Looking into her rearview mirror, Mrs. Smith saw her ex-husband, the defendant, sitting in the driver's seat of the car immediately behind her. The defendant motioned to Mrs. Smith to pull her car over to the side. After the light changed, Mrs. Smith crossed the intersection and stopped on the side of the road. Mrs. Smith testified that the defendant got out of his car, opened the driver's door of her car, pushed her over to the passenger side, and began hitting her in the ribs and head with his fist. According to Mrs. Smith, the defendant said to her, "I'm going to kill him, you bitch, you think you're smart," and, "I'm going back [to] find your boyfriend." The defendant then drove Mrs. Smith back to Irby's home in her car.

Mrs. Smith stated that when she and the defendant arrived at the corner of Madison and Washtenaw, Irby was standing on the street talking to a friend. The defendant stopped the car in front of where Irby was standing, and Mrs. Smith rolled down her window. Irby leaned over and looked into the car on the passenger side. Mrs. Smith tried to introduce Irby to the defendant, but when Irby extended his hand, the defendant just looked at Irby and then sped off.

The defendant and Mrs. Smith returned to the defendant's car at Jackson and Hamlin. Before getting out of Mrs. Smith's car, the defendant told her, "[W]henever I see either one of you again, I'm going to kill you." Mrs. Smith returned home and called Irby, who, later that evening, moved in with Mrs. Smith and her children. The defendant was charged with no crime relative to the incident on February 9, 1984.

The State's next witness was Irby. He, too, testified as to the events that took place on February 9, 1984, and substantiated Mrs. Smith's testimony. During direct examination, he made an in-court identification of the defendant.

Irby also testified that approximately one week after the Febru-

ary 9, 1984, incident, he was working as a drummer in a band at a bar known as Kingston Mines, located at 2500 North Halsted Street in Chicago. At approximately 3:45 a.m., on February 17, 1984, after the band had finished playing, Irby loaded his drums into his car and drove to Mrs. Smith's home. He testified that he had not been drinking that night. When he arrived at Mrs. Smith's home, he parked on the opposite side of the street, approximately two car lengths from the corner of Superior and Waller. He said that there was a street light directly across the street in front of Mrs. Smith's house and another street light at the corner in front of the house next to Mrs. Smith's.

Irby further stated that when he got out of his two-door vehicle and bent down to get his drums out of the backseat he sensed a shadow on his left side. He immediately turned around and saw the defendant approaching him, walking south off the curb across the street, approximately 20 feet from where Irby was standing. When Irby noticed that the defendant had a gun in his left hand, he attempted to get back into the car and pull the door shut. However, the defendant grabbed the door handle and shoved the gun between the window of the door and the car frame. Immediately thereafter, the defendant started shooting, striking Irby in the arm and shattering the car window. Irby testified that the defendant shot at him with a handgun. As the defendant continued shooting, Irby jumped over to the passenger's side of the front seat and rocked back and forth, trying to avoid the bullets. He said that he could see the defendant from the waist up "as clear as day." Irby stated that after the defendant stopped firing his gun, he fled north on Waller Street.

Irby said he then got out of the car and went to Mrs. Smith's house and pounded on the window. Mrs. Smith opened the door, and Irby entered the house and told her that her ex-husband had shot him. Mrs. Smith called the police.

Officers Donald Rouzan and Aaron Parker from the Chicago police department also testified on behalf of the State. Officer Rouzan stated that while on duty during the predawn hours of February 17, 1984, he received a call over his car radio that an individual had been shot at 5706 West Superior Street. Upon arriving at that address, Officer Rouzan found Irby lying on the dining-room floor of Mrs. Smith's house; he had been shot and was bleeding. Officer Rouzan said Irby told him that Levi Smith had shot him, and then gave a detailed description of the defendant.

On cross-examination, Officer Rouzan testified from his case report. He said that Irby told him that when he arrived at Mrs. Smith's

home at approximately 4:30 a.m. on February 17, 1984, he saw the defendant standing in the gangway of the house and that the defendant proceeded to walk towards him. Officer Rouzan also said that Irby told him that he "ducked down" on the car seat after the defendant began firing and that the defendant had fled in an unknown direction after the shooting. (The victim's pretrial statements to Officer Rouzan, as recounted by the officer at trial, were later claimed by the defendant to be in direct conflict with the victim's testimony.)

On redirect, Officer Rouzan stated that the information contained in his police report was merely a summary of the conversation he had had with the defendant. Officer Rouzan also noted that when the victim made these statements he was lying on Mrs. Smith's dining-room floor bleeding.

Officer Parker testified that he arrived at 5706 West Superior Street shortly after Officer Rouzan. He stated that Mrs. Smith provided him with the defendant's address, as well as the address of the defendant's sister. Officer Parker said that after leaving Mrs. Smith's home, he went to the home of the defendant's sister where he learned that the defendant could be found at his girlfriend's apartment, located at 2245 West Lake Street in Chicago. Officer Parker testified that he subsequently went to that address and placed the defendant under arrest.

Fred Lauback, an evidence technician employed by the Chicago police department, testified that he arrived at 5706 West Superior Street at 6:10 a.m. on February 17, 1984, and recovered a bullet underneath the chrome strip on the driver's door, as well as another "spent" bullet underneath the backrest on the passenger seat. Fred Warner, a firearms expert for the Chicago police department testified that both pieces of evidence were .22-caliber bullets.

The defendant testified in his own behalf and offered an alibi defense. He claimed that from midnight, February 16, 1984, until approximately 6 a.m. on February 17, 1984, at the time of his arrest, he had been at his girlfriend's apartment at 2245 West Lake Street. The defendant testified that he and his girlfriend left the apartment after midnight to get cigarettes and pop at the gas station, but stated that they returned 15 to 20 minutes later. He admitted that, shortly after they returned to the apartment, he left alone, but claimed he simply went down to the first floor for five minutes and never left the building. The defendant denied shooting Irby on February 17, 1984.

As part of its case in chief, the defense called Officer Anthony Bongiorno, apparently in an effort to demonstrate additional alleged inconsistencies between Irby's testimony at trial and his pretrial

statements to the police. Officer Bongiorno testified from his case report regarding his conversation with the victim in Cook County Hospital on February 17, 1984. Officer Bongiorno stated that Irby told him that, after he arrived at Mrs. Smith's house, he got out of his car and started to walk across the street and then saw the defendant standing in the gangway of the house. Irby, Bongiorno stated, immediately returned to his car. This was contrary to Irby's statement on direct examination that he had first noticed the defendant over his shoulder as he reached into the backseat of his automobile.

However, on cross-examination, Officer Bongiorno said that the investigation into the defendant's case was just one of a number of investigations he had been involved in during his employment with the Chicago police department and that his report merely summarized his conversation with Irby and was not a verbatim transcript of their conversation.

After closing arguments, the defendant was found guilty of attempted murder and aggravated battery. The trial court, as stated previously, entered judgment on the verdict, and the defendant was sentenced to 15 years' imprisonment. The defendant subsequently filed a motion for a new trial, which, after a hearing, was denied. The defendant then filed this appeal.

■ On appeal, the defendant contends that he was not proved guilty beyond a reasonable doubt. Specifically, the defendant argues that the victim's testimony was impeached due to various inconsistencies in his testimony at trial relative to the events that took place on February 17, 1984, and his pretrial statements made to Officer Rouzan and Detective Bongiorno taken shortly after the incident occurred. The defendant specifically points to several "so called" inconsistencies, such as the victim's pretrial statement that he "ducked down" in the driver's seat of his car when the defendant started shooting, and his statement at trial that he "jumped" to the passenger side to avoid the bullets, and the victim's pretrial statement that immediately following the incident the defendant fled in an "unknown direction," and his statement at trial that the defendant fled "north on Waller."

We find, however, that the alleged inconsistencies between the victim's pretrial statements and his in-court testimony are only minor in nature and affect only the credibility and weight to be given the testimony, and not its sufficiency. (See *People v. Jackson* (1980), 89 Ill. App. 3d 461, 468, 411 N.E.2d 893.) It is the general rule that any inconsistency between a witness' in-court statements and pretrial statements are properly matters of credibility for the jury to resolve (*Peo-*

*ple v. Childs* (1981), 95 Ill. App. 3d 606, 617, 420 N.E.2d 513), and a reviewing court will not substitute its judgment for that of the trier of fact on questions involving the credibility of the witnesses. (*People v. Baseer* (1980), 90 Ill. App. 3d 866, 870, 414 N.E.2d 5.) A conviction will not be reversed on appeal unless the evidence is so improbable as to justify a reasonable doubt of the defendant's guilt. *People v. McDonald* (1975), 62 Ill. 2d 448, 456, 343 N.E.2d 489.

██ The jury in this case had the opportunity to view the witnesses and hear their testimony and determine the weight and credibility to be accorded the evidence presented. (See *People v. Akis* (1976), 63 Ill. 2d 296, 298, 347 N.E.2d 733.) The jury obviously found the victim credible, despite the minor inconsistencies between his in-court testimony and pretrial statements. Moreover, where identification testimony is positive, as in this case, exact consistency as to purely collateral matters is not required in order to establish guilt beyond a reasonable doubt. (*People v. Ganter* (1977), 56 Ill. App. 3d 316, 325, 371 N.E.2d 1072.) The victim had been recently introduced to the defendant, namely, eight days prior to the incident; immediately after the incident he told Mrs. Smith and the police that the defendant had shot him, and gave the police a detailed description of the defendant; and he also made an in-court identification of the defendant at trial. Therefore, after reviewing the record in this case, we find that the jury had sufficient evidence to convict the defendant of attempted murder and aggravated battery, and the minor inconsistencies between the victim's pretrial statements and his in-court testimony are insufficient to create a reasonable doubt as to the defendant's guilt.

The defendant also argues that the testimony of Irby was impeached by the testimony of firearms expert Ernest Warner, since Irby testified that the defendant shot him with a handgun and Warner testified that the bullets retrieved from Irby's car were "fired from a rifle." However, subsequent to the filing of the record in this case, the State filed a motion to supplement the record which was not objected to by the defendant and which was allowed by this court. The motion to supplement indicates that Warner did not testify that the bullets were "fired from a rifle." Rather, Warner testified that the .22-caliber bullets were "rifled with six lands and grooves inclined to the right." Thus, the defendant's argument that Irby's testimony was impeached by that of Ernest Warner is without merit and was apparently made in error.

██ █ The defendant next contends that the trial court erred in its refusal to allow the defendant to recall the victim during the pre-

sentation of the defendant's case in chief without first vouching for the victim's credibility. The defendant made no offer of proof at trial concerning his reason for wanting to recall the victim, but from the context of the discussion between counsel and the court contained in the record, it appears that the defendant intended to impeach the victim regarding the inconsistencies between his pretrial statements made to Officer Rouzan and Detective Bongiorno, and his testimony on direct examination.

It is the defendant's argument that under Supreme Court Rule 238 (87 Ill. 2d R. 238) a party no longer has a duty to vouch for the credibility of his witness. Although we agree with the defendant (see *Chew v. Graham* (1984), 122 Ill. App. 3d 461, 464, 461 N.E.2d 574), we, nevertheless, find no error here in the trial court's refusal to allow the defendant to recall the victim. It has long been the rule in Illinois that the decision whether to allow a party to recall a witness for further cross-examination after the close of the adversary's case is within the trial court's discretion, and the court's ruling will not be reversed on appeal absent a clear abuse of that discretion. *People v. Harris* (1979), 74 Ill. 2d 472, 477, 386 N.E.2d 60; *People v. Holmes* (1982), 104 Ill. App. 3d 1049, 1053, 433 N.E.2d 1027.

As we noted above, it appears that the defendant's sole purpose in recalling the victim was to impeach him, and as such, this testimony would have been merely cumulative. The record clearly indicates that defense counsel had thoroughly cross-examined the victim during the presentation of the State's case in chief and confronted him with the inconsistencies between his pretrial statements to police officers and his testimony on direct examination. Furthermore, the defendant was also given the opportunity to cross-examine Officer Rouzan with his police report in order to show the inconsistencies between the victim's testimony at trial and his pretrial statements to Rouzan. We note, however, that on redirect examination, Officer Rouzan did testify that his police report was only a summary of his conversation with the victim, and at the time the victim made his statement, he was lying on the floor bleeding.

Moreover, as part of his case in chief, the defendant called Detective Bongiorno and questioned him regarding the information contained in his police report relative to his conversation with the victim in Cook County Hospital shortly after the incident occurred. Although Detective Bongiorno's testimony on direct examination revealed further inconsistencies between the victim's pretrial statements and his testimony at trial, on cross-examination Detective Bongiorno explained, as did Officer Rouzan, that his police report was merely a

summary of his conversation with the victim. Therefore, in light of the testimony offered by Officer Rouzan and Detective Bongiorno, it appears that the probative value of any further testimony by the victim relative to the inconsistencies between his pretrial statements and his in-court testimony was questionable at best, and its admission was properly within the trial court's discretion.

In support of his argument that he should have been allowed to recall the victim, the defendant has cited this court's opinion in *People v. Gonzalez* (1983), 120 Ill. App. 3d 1029, 458 N.E.2d 1047, *aff'd* (1984), 104 Ill. 2d 332, 472 N.E.2d 417. In *Gonzalez* we held that the trial court's refusal to permit the defendant to impeach his own witness on redirect examination by means of the witness' omission of certain facts from his police report constituted prejudicial error. *Gonzalez*, however, is distinguishable from the instant case because the witness there was the sole witness called by the defense and had not been called by the State during the presentation of its case in chief. In the instant case, the victim was originally called by the State and was subject to extensive cross-examination by the defendant. Moreover, defense counsel closely scrutinized the victim's in-court testimony in light of his pretrial statements made to the police by cross-examining Officer Rouzan and calling Detective Bongiorno to testify. Accordingly, we find no abuse of discretion here in the trial court's denial of defendant's request to recall the victim.

Even assuming, *arguendo*, that the defendant should have been permitted to recall the victim, the trial court's refusal to do so here was harmless error in view of the proof beyond a reasonable doubt of the defendant's guilt. *People v. Dorsey* (1982), 109 Ill. App. 3d 218, 229, 440 N.E.2d 394.

■ The defendant's final argument in this appeal concerns the instructions tendered to the jury. Specifically, the defendant argues that the jury was improperly instructed on the elements of attempted murder and that the jury should not have been instructed on the evidence of other crimes. The State asserts that the defendant has waived any claim of error as to the instructions given by the court because the defendant did not object to the instructions either at trial or in his written motion for a new trial and also did not tender any alternative instructions to the court. The State further argues that any error here relative to the tendering of these instructions does not amount to plain error warranting reversal. We agree with the State's argument.

A defendant's failure to tender the proper jury instructions and to object to the instructions either at trial or in his post-trial motion op-

erates as a waiver of any error contained in the instruction. (*People v. Huckstead* (1982), 91 Ill. 2d 536, 643, 440 N.E.2d 1248.) However, a limited exception to the waiver rule is contained in Supreme Court Rule 451(c) (87 Ill. 2d R. 451(c)), which permits the review of "substantial defects" in instructions "if the interests of justice require." (*People v. Tannenbaum* (1980), 82 Ill. 2d 177, 182, 415 N.E.2d 1027.) We will therefore consider whether any error in the jury instructions given here rises to the level of plain error warranting reversal.

■ The defendant contends that the trial court erred in failing to include the phrase "without lawful justification" in the murder and attempt instructions. He argues that if the jury had found that he acted with lawful justification, he should have been acquitted, and thus, the omission of the "without lawful justification" language denied him his right to a fair trial. However, in reviewing the record, we find that the defendant's argument is clearly erroneous because he never presented any evidence of lawful justification for his actions. Rather, the defendant presented an alibi defense. The Illinois Pattern Jury Instructions provide that the "without lawful justification" language should only be included in the definitional instruction for murder when an instruction on an affirmative defense is to be given. (See Illinois Pattern Jury Instruction, Criminal, No. 7.01, Committee Note, at 57 (2d ed. 1981) (hereinafter cited as IPI Criminal 2d).) In view of the fact that the defendant presented no evidence of lawful justification, the plain-error exception to the waiver rule created in Rule 451(c) is not warranted here. See *People v. McNutt* (1986), 146 Ill. App. 3d 357, 367, 496 N.E.2d 1089; *People v. Jeffrey* (1981), 94 Ill. App. 3d 455, 468-69, 418 N.E.2d 880.

The defendant also objects to the tendering of IPI Criminal 2d No. 3.14, which instructed the jury on the evidence of other crimes. This instruction provided:

"Evidence has been received that the defendant has been involved in an offense other than that charged in the indictment. This evidence has been received solely on the issue of the defendant's identification, intent, and motive. This evidence may be considered by you only for the limited purpose for which it was received." IPI Criminal 2d No. 3.14.

The record in this case reveals that, prior to trial, the defendant filed a motion *in limine* seeking to exclude all evidence of the events occurring on February 9, 1984. This motion was denied. Thereafter, during the instruction conference, the State tendered IPI Criminal 2d No. 3.14 to the trial court, and accordingly, the jury was instructed that any evidence relative to the events occurring on February 9,

1984, could be considered solely for the purpose of showing the defendant's motive, intent, or identity. We note that on appeal the defendant does not challenge the trial court's denial of his motion *in limine*.

■ The defendant argues here that the trial court erred in tendering IPI Criminal 2d No. 3.14 because, in doing so, it incorrectly referred to the incident on February 9, 1984, as an "offense," which could have led the jury to believe that the defendant had the propensity to commit the crime of battery. Thus, the defendant maintains that the tendering of IPI Criminal 2d No. 3.14 resulted in the denial of his right to a fair trial.

We find no merit in the defendant's argument. Although the trial court characterized the events occurring on February 9, 1984, as an "offense" through its use of IPI Criminal 2d No. 3.14, there is no indication in the record that the jury was led to believe that the defendant was convicted or even charged with a crime relative to the events which occurred on February 9, 1984. Moreover, through the use of IPI Criminal 2d No. 3.14, the jury was properly instructed as to the limited purpose for which this evidence was received. The defendant does not contend, nor does the record disclose, any evidence that the jury disregarded this limiting instruction. We, therefore, hold that if any error occurred in tendering IPI Criminal 2d No. 3.14, that error did not rise to the level of plain error such as to deprive the defendant of a fair trial.

Finally, we further note in passing that, even assuming, *arguendo*, the giving of IPI Criminal 2d No. 3.14 constituted plain error here, it was harmless beyond a reasonable doubt. The evidence of the defendant's guilt here was so clear and convincing that the jury could not reasonably have found the defendant not guilty. See *People v. Jones* (1979), 81 Ill. 2d 1, 9, 405 N.E.2d 343; *People v. Dominique* (1980), 86 Ill. App. 3d 794, 802, 408 N.E.2d 280.

For the foregoing reasons, the defendant's conviction is affirmed.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.