THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JACKEY LEE BOND, Defendant-Appellant.

Fourth District   No. 4—88—0113

Opinion filed January 26, 1989.—Rehearing denied February 28, 1989.

Sheldon L. Banks, of Chicago, for appellant.

Larry R. Fichter, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and J.A.C. Knuppel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

The defendant, Jackey Lee Bond, was charged by information in the circuit court of Macon County with two counts of attempt (murder) (Ill. Rev. Stat. 1987, ch. 38, par. 8—4(a)) and two counts of unlawful use of a weapon by a felon (Ill. Rev. Stat. 1987, ch. 38, par. 24—1.1). The circuit court dismissed the second count of attempt (murder) as to Ferita Sharee Hayes on the defendant's motion for directed finding at the close of the State's case. At the conclusion of the bench trial, the circuit court found the defendant guilty of the first count of attempt (murder) as to Clara Lamb and the two counts of unlawful use of a weapon by a felon. The defendant was sentenced to one term of seven years' and two terms of three years' imprisonment to be served concurrently.

The defendant contends on appeal the State failed to prove him guilty of the charged offenses beyond a reasonable doubt. We disagree.

The following facts are not in dispute: On April 28, 1987, Sheila Hayes (Hayes) called the defendant to tell him their daughter, Ferita Sharee Hayes (Ferita), was sick. After her call, she visited the defendant at his house at 1019 North Folk Street in Decatur, Illinois. Hayes requested assistance with expenses for medicine and transportation for a 1 p.m. doctor appointment. In response to her requests, the defendant gave Hayes some money for medicine and promised to attempt to arrange transportation to the doctor.

Around noon, a friend, Clara Lamb (Lamb), drove Hayes and Ferita back to the defendant's house. Since there were two cars parked in front of the defendant's house, Lamb parked her car across the street. Hayes got out of the car and walked up to the house. Lamb and Ferita remained in the car.

The defendant's girlfriend, Celestine Cunningham (Cunningham), answered the door. She called the defendant to the door. The defendant told Hayes that he had not been able to arrange transportation.

The remaining facts are in dispute: The defendant and Hayes then walked out to Lamb's car. The defendant asked Lamb whether she could drive Hayes and Ferita to the doctor. Lamb refused as she had to go to work. The defendant questioned Lamb's friendship, and Lamb responded she did not have enough gas for the drive. The defendant offered to pay for her gas. Lamb still refused and told the defendant it was not her responsibility to solve the problem of transportation.

An argument ensued between the defendant and Lamb. The level of violence escalated in their argument. Their initial exchange of insults progressed to the throwing of objects and culminated in the firing of a weapon.

Lamb and Hayes testified the defendant walked back into his yard, picked up two bricks, and threw them at Lamb's car. In response, Lamb picked up a bottle from the floorboard of her car, got out of her car, and threw it at one of the cars parked in front of the defendant's house.

The defendant disputed their testimony. The defendant testified Lamb threw a bottle at him as he approached her car. In response, he picked up a brick and threw it at her car. Lamb then got out of her car, picked up the same brick, and threw it at one of the cars parked in front of his house.

Lamb testified the defendant became upset after she threw the bottle at the car. She heard him say, "I'm going to shoot that bitch." As he went into his house, she also heard him say, "I'm going in the house and get my gun." Lamb then got in her car. As she was driving away, she heard a shot. Lamb turned and saw the defendant standing in his yard. He was holding a handgun aimed at her car. She heard three or four more shots. One of the shots hit the rear door on the driver's side.

Hayes also testified the defendant threatened Lamb. She heard him tell Lamb "he was going to go get his gun and shoot her." The defendant went into his house and brought out a handgun. He shot once in the air. At this, Hayes yelled at Lamb and Ferita to leave. The defendant then aimed at Lamb's car and fired three times as she drove away.

The defendant again disputed the testimony of Lamb and Hayes. He testified he walked into his house without saying anything to Lamb. Once inside his house he took a handgun out of Cunningham's purse. He then went outside with the handgun to scare Lamb into leaving his house. He did not aim or fire the gun at Lamb. He fired three or four times in the air. At this, Hayes told Lamb to leave. Lamb then got into her car and drove away.

The State corroborated the testimony of Lamb and Hayes with two occurrence witnesses. The first occurrence witness was Robin Hooker (Hooker). Hooker, the defendant's next-door neighbor, was at home on April 28, 1987. Shortly before 1 p.m. she heard a car followed by yelling and four or five shots. Hooker assumed the sounds came from the defendant's house.

The second occurrence witness was Harry Backus (Backus).

Backus, a claim agent with Norfolk & Western Railway, worked at 1735 East Condit Street in Decatur, Illinois. As Backus pulled into the parking lot entrance shortly before 1 p.m. on April 28, 1987, he noticed a man holding a handgun. The man stood in a yard approximately 150 feet to the northwest of Backus. He did not notice any other persons in the yard. Backus identified the man in court as the defendant. He described the defendant's position as being similar to a firing range stance. He saw the defendant change his position to sight and fire four times at a car as it moved north on Folk Street.

The State also corroborated the testimony of Lamb and Hayes with physical evidence. In executing the search warrant, the Decatur police found weapons and ammunition at the defendant's house. The police found three discharged .45 caliber cartridge cases on the front sidewalk east of the defendant's house. The cases were positioned in a semicircle spaced approximately two feet apart. They also found one discharged .45 caliber cartridge case a few feet from the front door. Inside the defendant's house, the police found an empty .45 caliber cartridge clip on a nightstand in the first-floor bedroom. Finally, the police found a purse containing two gun cases in the basement. The first case held a loaded .45 caliber handgun. The handgun was found cocked with one live round in the chamber and one live round in the clip. The second case held a .32 caliber handgun along with .45 caliber ammunition, .38 caliber ammunition, .32 caliber ammunition, and two .45 caliber clips.

The Decatur police also examined Clara Lamb's car. There were two damaged areas on the driver's side rear door of the car. The damage appeared to be new. The first damaged area was a dent with small particles of mortar or concrete brick scratched into the paint. The second damaged area was a gouge coated with a lead-like substance in some places.

The defendant also corroborated his testimony with an occurrence witness. The defendant's sole occurrence witness was Celestine Cunningham. Cunningham, the defendant's girlfriend, acknowledged ownership of the recovered purse and its contents. Cunningham testified she was holding the handguns as collateral for a loan to a friend. She also testified she had brought the handguns to the defendant's house in her purse.

With this testimony, Cunningham recanted her police statement. In her police statement, Cunningham wrote: (1) she had not brought any handguns to the defendant's house; (2) she did not know how the handguns got in her purse; (3) she had seen a .45 caliber handgun, or one like it, on the defendant's dining room table in the previous month; (4)

she had never before seen the .32 caliber handgun; (5) she had last seen her purse in the bathroom of the defendant's house; and (6) she did not know how her purse got in the basement of the defendant's house. Cunningham gave two reasons for the recantation of her police statement. She testified she was told by the police in the presence of an attorney to write lies to favor the prosecution. She also testified she would not have been allowed to go to work until her statement complied with what the prosecution wanted to hear.

■ The defendant first argues the State failed to prove he possessed the specific intent to kill. A conviction for attempt (murder) requires proof of the specific intent to kill. Intent refers to the state of mind of the defendant at the time of the incident. It can rarely be proved by direct evidence. Intent may be inferred from the circumstances surrounding the incident, such as the character of the assault and the use of a deadly weapon. *People v. Jackiewicz* (1987), 163 Ill. App. 3d 1062, 1065, 517 N.E.2d 316, 318; *People v. Shields* (1955), 6 Ill. 2d 200, 205, 127 N.E.2d 440, 443.

The witnesses for the State testified to the following version of the incident: The incident occurred at the defendant's residence in daylight. He escalated the level of violence in the argument with Lamb. After their initial exchange of insults had progressed into the throwing of objects, the defendant threatened Lamb. He acted immediately on his threats. The defendant went into his house and brought out a handgun. He fired once in the air. The defendant then assumed a firing range stance. He changed his position to sight and fire three or four times at Lamb as she drove away. A shot hit the rear door on the driver's side of her car.

The defendant, however, testified to a different version of the incident. He denied threatening Lamb. He contended that he brought the handgun outside to frighten Lamb. He also denied shooting at Lamb. He contended that he only fired the handgun into the air.

The physical evidence corroborates the testimony of the witnesses for the State. First, the pattern and placement of the discharged cartridge cases indicate the shooter aimed and fired at a moving target. Second, the rear door on the driver's side of Lamb's car had a gouge coated with a lead-like substance in some places. This gouge indicates the impact and path of a bullet.

■ In the prosecution of attempt (murder), the trier of fact is to resolve questions of fact about whether the State has shown the specific intent to kill. (*People v. Woods* (1978), 62 Ill. App. 3d 381, 385, 378 N.E.2d 1271, 1275.) The physical evidence indicates the defendant's actions exceeded any attempt to merely frighten Lamb. If the defend-

ant had acted with only the intent to frighten Lamb, this physical evidence would not exist. Thus, the State proved that the defendant possessed the specific intent to kill.

The defendant also argues the inconsistencies in the testimony of the witnesses for the State rendered the evidence insufficient to convict him of attempt (murder). A conviction will be reversed in a criminal case where the material evidence is found to be so "improbable or unsatisfactory as to raise a serious doubt of defendant's guilt." *People v. Lindsey* (1979), 73 Ill. App. 3d 436, 447, 392 N.E.2d 278, 286.

There were inconsistencies in the testimony of the witnesses for both the prosecution and the defense. The witnesses changed their testimony between the time of their police interview and their court appearance. The witnesses also changed their testimony between direct examination and cross-examination. The inconsistencies in the testimony of the witnesses rest on the following points: (1) who started the argument between the defendant and Lamb; (2) who was the first to throw an object; (3) what objects were thrown by Lamb; (4) where were the objects thrown; (5) the location of the parties at the time of the shooting; (6) the number and direction of the shots fired by the defendant; and (7) whether any of the shots hit Lamb's car.

Exact consistency in the testimony of the witnesses for each side is not required to establish guilt beyond a reasonable doubt. The trier of fact determines the credibility of witnesses, the weight accorded to testimony, and the inferences drawn from evidence. Given this function, a reviewing court will not substitute its judgment for that of the trier of fact on conflicts in the evidence. *People v. Akis* (1976), 63 Ill. 2d 296, 298-99, 347 N.E.2d 733, 734-35.

To a degree, the inconsistencies are a result of the very nature of the incident. The incident happened quickly. It was one charged with emotion. Hayes and Lamb were both upset at the time of their interviews with the police. This accounts for some of the inconsistencies in the testimony.

The remaining inconsistencies in the testimony are resolved by the physical evidence. The police found four discharged cartridge cases in the front yard of the defendant's house. One cartridge case was found a few feet from the front door. This accounts for the shot the defendant fired in the air. The other cartridge cases were found east of the sidewalk. The cartridge cases were positioned in a semicircle spaced approximately two feet apart. The pattern and placement of the cartridge cases indicate the defendant aimed and fired three times at a moving target.

The police also examined Lamb's car. There were two newly damaged areas on the driver's side rear door of the car. The first damaged area was a dent with small particles of mortar or concrete brick scratched into the paint. This accounts for the brick thrown by the defendant. The second damaged area was a gouge coated with a lead-like substance in some places. This indicates the impact and path of a bullet.

■ The inconsistencies in the testimony of the witnesses are minor in nature. Such minor inconsistencies "affect only the credibility and weight to be given the testimony, and not its sufficiency." (*People v. Smith* (1986), 149 Ill. App. 3d 145, 150, 500 N.E.2d 605, 609.) The evidence here was sufficient to sustain the conviction for attempt (murder).

The defendant next argues the State failed to prove he knowingly possessed the recovered weapons.

■ The State prosecuted the defendant under section 24—1.1 of the Criminal Code of 1961. Section 24—1.1(a) provides in pertinent part:

"(a) It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under Section 24—1 of this Act or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction." (Ill. Rev. Stat.1987, ch. 38, par. 24—1.1(a).)

Thus, the State is required to prove the defendant's knowing possession of a prohibited weapon or ammunition and his prior felony conviction. *People v. Gober* (1986), 146 Ill. App. 3d 499, 496 N.E.2d 1226; *People v. Rangel* (1987), 163 Ill. App. 3d 730, 516 N.E.2d 936.

■ Criminal possession of weapons or ammunition may be either actual or constructive. (*People v. Nunez* (1974), 24 Ill. App. 3d 163, 167, 320 N.E.2d 462, 465.) The resolution of the issue of criminal possession turns on the credibility of the witnesses and the weight given their testimony. These are both matters for the trier of fact. *People v. Akis* (1976), 63 Ill. 2d 296, 298-99, 347 N.E.2d 733, 734-35.

■ The defendant admitted to firing a handgun during the incident. This admission alone is sufficient proof of possession of a prohibited weapon and ammunition. Additional proof is supplied by the eyewitness accounts of Lamb, Hayes, and Backus.

Despite this admission, the defendant contends he did not possess the recovered weapons and ammunition as Cunningham brought the items into his house. There is no evidence Cunningham had more claim to possession of the recovered weapons and ammunition than the

defendant. Cunningham's trial testimony was not credible. She gave a totally different account about the recovered weapons and ammunition at her police interview. Given this account, the circuit court could properly conclude Cunningham's trial testimony was fabricated to protect the defendant.

■ The defendant also argues the State failed to prove his prior felony conviction. To sustain a conviction for unlawful use of weapons, the State must prove the defendant's prior felony conviction beyond a reasonable doubt. *People v. Palmer* (1984), 104 Ill. 2d 340, 472 N.E.2d 795.

The defendant mistakenly contends the State offered the certified copy of his 1983 conviction for the felony offense of unlawful possession of cannabis for the sole purpose of impeachment. If this were the case, then the defendant would be entitled to reversal of the two counts of unlawful use of a weapon by a felon. A defendant cannot be found guilty of felonious unlawful use of weapons where the trier of fact considers the prior conviction only for the purpose of impeachment. *People v. Edwards* (1976), 63 Ill. 2d 134, 345 N.E.2d 496.

■ The State, however, offered the certified copy of the defendant's 1983 conviction for the felony offense of unlawful possession of cannabis for both impeachment and substantive purposes. At the suppression hearing, the State offered into evidence, over defendant's objection, a certified copy of the defendant's prior felony conviction. The circuit court admitted the certified copy of conviction into evidence for the sole purpose of impeachment. At trial, the State again offered into evidence a certified copy of the defendant's prior felony conviction. The circuit court admitted the certified copy of conviction into evidence for substantive purposes without objection by the defense.

■ The defendant also mistakenly contends a certified copy of conviction bearing the same name as that of the defendant is insufficient proof of his prior conviction. Such a contention is no longer viable in Illinois. Identity of name in a certified copy of prior conviction gives rise to a rebuttable presumption of identity of person. (*People v. Davis* (1983), 95 Ill. 2d 1, 31, 447 N.E.2d 353, 368.) Given this presumption, the State's offer of a certified copy of the defendant's prior conviction in the same court as the present offense is sufficient proof under section 24—1.1. *People v. Gober* (1986), 146 Ill. App. 3d 499, 496 N.E.2d 1226, citing *People v. Lane* (1948), 400 Ill. 170, 79 N.E.2d 65.

Affirmed.

McCULLOUGH, P.J., and LUND, J., concur.