THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
SHASTER SMITH, Defendant-Appellant.

Second District   No. 2—88—1197

Opinion filed March 29, 1991.

G. Joseph Weller and Steven E. Wiltgen, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan, and Stephen R. Frank, of Johnson, Frank, Frederick & Walsh, of Urbana (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE NICKELS delivered the opinion of the court:

Following a bench trial, defendant, Shaster Smith, was convicted of armed robbery, attempt (armed robbery), unlawful use of weapons by a felon, and aggravated assault. He appeals only the attempt (armed robbery) and unlawful use of weapons by a felon convictions, arguing that the evidence as to each charge was legally insufficient. We reverse both the attempt (armed robbery) conviction and the unlawful use of weapons by a felon conviction.

The evidence, generally not in dispute, shows that on July 18, 1988, defendant paid train fare from Chicago to Waukegan. However, he left the train at the Highland Park Metra station, where, at about 12:30 p.m., he entered the taxi cab of Roman Suminski (cab driver). At defendant's direction, the cab driver drove to Genesee Street in Waukegan. In response to the cab driver's inquiry, defendant said that he was looking for a jewelry store. The cab driver noticed a jewelry store and pointed it out, but defendant told the cab driver that it was "not the one." Defendant then directed the cab driver to go to the Waukegan Metra station. On the way there, the cab driver noticed a police car and suggested defendant ask directions, but defendant declined. When the cab driver parked at the train station and asked for the fare, defendant drew a gun, demanded money, and ordered the cab driver out of the cab. After defendant drove the cab away, the cab driver called the police and reported the robbery.

A Waukegan police officer responded to the cab driver's call. Police detectives heard the dispatch about the robbery and located the abandoned cab about a block and a half northwest of the Metra station. While surveying the area, the detectives saw defendant walking. When defendant saw the police car, he started to run. One of the detectives ordered defendant to stop. Defendant dropped his gun, some money, and a pillow case, as he ran and jumped a fence. Defendant hid in a trailer where he was discovered and apprehended by police.

After being arrested for armed robbery, defendant consented to an interview at the Waukegan police station. Defendant admitted to detec-

tives that he had intended to rob an unidentified jewelry store on Genesee Street and to use the stolen cab as a getaway vehicle. Defendant told the detectives that he did not know the name of the building where the jewelry store was located but knew what the jewelry store looked like. In other respects, defendant's admissions corroborated the testimony of the State's witnesses at the trial.

The defense put on no witnesses at the trial. After putting on all of its testimony, the prosecution, as part of its proof on the unlawful use of weapons charge, filed a certified statement of conviction from the circuit court of Cook County indicating that on November 1, 1983, "Shaster Smith" pleaded guilty to and was sentenced on a charge of burglary. The copy of conviction did not identify the person convicted in any way other than by name. Defense counsel, in moving for a directed verdict, argued that the unlawful use of weapons by a felon charge could not be sustained because the copy of conviction was legally insufficient to establish that defendant was the person convicted of the 1983 burglary charge. Defendant rested without presenting any witnesses. The trial judge found defendant guilty of all four charges. Defendant was subsequently sentenced to concurrent terms of 21 years' imprisonment for armed robbery of the cab driver, 15 years' imprisonment for attempted armed robbery of the jewelry store, five years for unlawful use of weapons by a felon, and one year for aggravated assault.

Defendant argues first that he could not properly be found guilty of attempted armed robbery of the jewelry store because there is no evidence that he ever found or came within any particular distance of the store. He argues that because the prosecution failed to show that he ever came within "dangerous proximity to success" of his objective, his conviction must be reversed.

Defendant also argues that the court, in adjudging the sufficiency of the evidence, must limit itself to those facts set out in the indictment, to wit, that, "While armed with a *** gun, [defendant] went to a street in Waukegan and inquired of a cab driver as to the location of a jewelry store he wanted to rob." However, defendant at no time objected to any variance between pleading and proof or to the trial judge's consideration of facts beyond those specified in the indictment. In passing on the sufficiency of the evidence of attempt (armed robbery), we therefore examine the totality of the evidence presented at trial. *People v. Flowers* (1958), 14 Ill. 2d 406, 415-17, *cert. denied* (1959), 358 U.S. 942, 3 L. Ed. 2d 349, 79 S. Ct. 349.

■ The Illinois Criminal Code of 1961 provides that a person commits an attempt "when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission

of that offense." (Ill. Rev. Stat. 1987, ch. 38, par. 8—4(a).) Defendant concedes that he intended to rob a jewelry store, but argues that at most his actions amounted to preparation rather than attempt. The State maintains, and defendant denies, that under *People v. Terrell* (1984), 99 Ill. 2d 427, defendant, by arming himself, traveling to Waukegan, searching for the jewelry store, and driving a stolen cab that he intended to use as a getaway car, committed a substantial step toward his objective of robbing the store.

In *Terrell*, the defendant was convicted of attempted armed robbery. The *Terrell* defendant was discovered hiding in weeds about 25 to 30 feet behind a service station and carrying a loaded revolver and a stocking mask. In a split decision, the supreme court held the evidence sufficient to prove both intent and a substantial step toward the armed robbery of the service station. The majority stated the general rule that although it is not necessary that a defendant commit the last proximate act to be convicted of attcmpt, mere preparation is not a substantial step. The determination of whether the line between preparation and perpetration has been crossed must therefore be decided on the facts of each case. (99 Ill. 2d at 433.) The court noted earlier findings of a "substantial step" in *People v. Burleson* (1977), 50 Ill. App. 3d 629, where the defendant, armed with a shotgun, a suitcase, and disguises, was prevented from entering a bank only by the quick action of a man inside the bank, and in *People v. Reyes* (1981), 102 Ill. App. 3d 820, where the defendant's conviction of attempted armed robbery was upheld even though he never entered the drugstore whose patrons he intended to rob. The *Terrell* court held the defendant, like those in *Burleson* and *Reyes*, was in possession of the materials necessary to carry out an armed robbery at or near the place contemplated for its commission and, therefore, had done enough to support a finding of a "substantial step."

The *Terrell* majority held further that the defendant's actions fit within certain provisions of the Model Penal Code, providing that a "substantial step" may consist of:

"(f) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances." *Terrell*, 99 Ill. 2d at 436, citing Model Penal Code §5.01(2) (Proposed Official Draft 1963).

The three *Terrell* court dissenters denied intent had been shown beyond a reasonable doubt and further maintained that, as the defendant's actions were preliminary activities consistent with a variety of possible

outcomes and as the defendant had never been observed moving toward any target or making any demands on anyone, the defendant's activities did not bring him within "dangerous proximity to success." The *Terrell* dissent asserted that the majority misapplied the standards of the Model Penal Code because the record did not initially establish the defendant's intent to rob the gas station, and without the establishment of specific intent it was impossible to test whether the conduct involved was strongly corroborative of the defendant's criminal purpose.

In applying *Terrell*, we note first defendant correctly points out a major difference between his case and the facts of *Terrell, Burleson,* and *Reyes*: in each of those cases, the defendant had already found his target and either was waiting close by, intending to pounce momentarily, or had already started toward the building. In each case, the defendant's physical proximity to an identified, settled target enabled the fact finder to conclude beyond a reasonable doubt that the defendant had gone beyond preparation and achieved dangerous proximity to success. Here defendant never located his target, although he did drive along the street where he expected to find it. The facts of this case do not fit within the rule of *Terrell* that a substantial step has been taken when the defendant possesses the necessary materials for the crime at or near the place contemplated for its commission. (*Terrell*, 99 Ill. 2d at 435.) We have found no case in our jurisdiction analogous to this one. However, in *People v. Rizzo* (1927), 246 N.Y. 334, 158 N.E. 888, the New York Court of Appeals reversed the defendant's conviction of attempted robbery where the evidence showed only that the defendant and his confederates rode around town looking for their intended victim but were arrested before they could find him. The court explained:

> "In a word, these defendants had planned to commit a crime, and were looking around the city for an opportunity to commit it, but the opportunity fortunately never came. Men would not be guilty of an attempt at burglary if they had planned to break into a building and were arrested while they were hunting about the streets for the building not knowing where it was." 246 N.Y. at 338-39, 158 N.E. at 889.

■ However, the *Terrell* court held that a "substantial step" may be also found according to the standards of the Model Penal Code based on a defendant's "(e) possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances." *Terrell*, 99 Ill. 2d at 436, citing Model Penal Code §5.01(2)(e) (Proposed Official Draft 1963).

■ By shifting the emphasis from what remains to be done to what the actor has already done, the Model Penal Code standards enable a trier of fact to find a "substantial step" even where the commission of the crime still requires several major steps to be taken. The standards thus broaden the scope of criminal liability beyond that under the "dangerous proximity" test. (Wechsler, Jones & Korn, *The Treatment of Inchoate Crimes in the Model Penal Code of the American Law Institute: Attempt, Solicitation, and Conspiracy*, 61 Colum. L. Rev. 571, 593 (1961).) This expanded reading of the "substantial step" language of the attempt statute is supported not only by the fact that the statutory language is taken from the Model Penal Code, but also by the committee comments to section 8—4(a) that "[w]hether we describe the required act as a substantial step toward commission, *or* as in dangerous proximity to the principal offense, the courts must still make the determination based on the facts of each case." (Emphasis added.) Ill. Ann. Stat., ch. 38, par. 8—4, Committee Comments, at 499 (Smith-Hurd 1989).

The Model Penal Code criteria were consciously patterned after a Louisiana statute that was expressly directed at preventing the type of result in *People v. Rizzo*. Thus, searching or lying in wait for a victim who never materializes may still amount to criminal attempt. Wechsler *et al.*, 61 Colum. L. Rev. at 595-96.

However, even the expanded scope of a "substantial step" provided by the Model Penal Code provisions does not allow mere preparation to rise to the level necessary to find an attempt. Both of the cited Model Penal Code provisions contain a requirement of specificity that is lacking in this instance.

"[T]he contemplated victim of the crime" was never identified here. (See Model Penal Code §5.01(2)(a) (1985).) Although defendant admitted an intent to rob a jewelry store, defendant, as well as the State, was unable to give the name, address or description of the store that was "the contemplated victim." Rather, the evidence reveals that defendant had only general, vague notions of the location and the appearance of a jewelry store. Defendant's lack of specific information belies the existence of a specific contemplated victim as required by the Model Penal Code.

Nor were the materials carried by defendant "specially designed" for the unlawful purpose of robbing a jewelry store. (See Model Penal Code §5.01(2)(e) (1985).) A gun and a pillowcase simply do not rise to the level of "specifically designed" materials.

■ The *Terrell* majority's adoption of the expanded scope of "substantial step" as provided by the Model Penal Code did not abrogate the general rule that mere preparation does not bring a defendant in "dan-

gerous proximity to success." (*Terrell*, 99 Ill. 2d at 434, citing *Hyde v. United States* (1912), 225 U.S. 347, 388, 56 L. Ed. 1114, 1134, 32 S. Ct. 793, 810 (Holmes, J., dissenting).) Rather, only clearly specific conduct which can only be directed at the specific identified victim or crime if "strongly corroborative of the actor's criminal purpose" may be held a "substantial step." See Model Penal Code §5.01(2) (1985).

■ We, therefore, hold that defendant was not proved guilty beyond a reasonable doubt of attempt (armed robbery) and reverse his conviction of and sentence for this charge.

We hold further that the evidence was legally insufficient to convict defendant of unlawful use of weapons by a felon. The sole evidence at trial of defendant's prior felony conviction, an essential element of the charge, was a certified copy of a conviction from the circuit court of Cook County indicating that on November 1, 1983, "Shaster Smith" was sentenced on a guilty plea to a term of three years for burglary. The State argues that under *People v. Davis* (1983), 95 Ill. 2d 1, and *People v. Bond* (1989), 178 Ill. App. 3d 959, the identity of names between defendant and the defendant in the copy of conviction creates a rebuttable presumption of identity of person, which, in the absence of any contest by defendant, shows his prior conviction beyond a reasonable doubt. We disagree, however, that these cases enable us to affirm the trial court where the previous conviction is an element of the offense to be proved at trial and the copy of conviction is uncorroborated.

Prior to *Davis*, our courts consistently held that the presumption of identity of person from identity of names, though legally sufficient in a civil context, was inadequate to establish identity under the criminal standard of proof beyond a reasonable doubt. Thus, proof of defendant's prior conviction required more than the record of conviction of someone with the same name. (*People v. Casey* (1948), 399 Ill. 374, 378; *People v. Langdon* (1979), 73 Ill. App. 3d 881.) However, the supreme court upheld the application of judicial notice in the criminal context in *People v. Davis* (1976), 65 Ill. 2d 157, a case in which the defendant coincidentally had the same name as that in the decision now urged by the State. Nonetheless, in *People v. Martin* (1981), 97 Ill. App. 3d 704, we held that *Casey* and *Langdon* were still good law, noting that the earlier *Davis* decision involved both a trial judge with direct personal knowledge of the prior conviction and a preponderance, rather than reasonable doubt, standard of proof.

The State, however, contends that under *People v. Davis* (1983), 95 Ill. 2d 1, the rebuttable presumption of identity held inadequate in *Casey, Langdon* and *Martin* must now be considered sufficient to satisfy the reasonable doubt standard, at least where, as here, defendant

does not directly deny that he is the person named in the prior conviction. Because *Davis* has generated much confusion, we examine both its holding and subsequent application in detail.

In *Davis*, the defendant argued that the State had not, in a death penalty hearing on aggravating factors, adequately proved his prior convictions. The State introduced certified copies of defendant's two prior indictments and convictions for murder. An employee of the court clerk's office testified that these were the convictions of the same Girvies L. Davis presently being sentenced. The witness did not, however, identify the defendant, and the defendant's counsel did not cross-examine the witness or object to this lack of identification. The supreme court held that the defendant, who did not deny his prior convictions or assert that he was not the Girvies L. Davis named in the document, was not prejudiced by the State's proof of identity. The court announced its adoption of a rebuttable presumption of identity of person based on identity of name and found that the evidence satisfied the State's burden to prove the defendant's prior conviction beyond a reasonable doubt. The State urges us to interpret this decision as holding that an unrebutted presumption of identity, without more, satisfies the State's burden of proving a prior conviction as an element of a crime beyond a reasonable doubt as a matter of law.

Only the Appellate Court for the Fourth District (fourth district) has adopted the expansive reading of *Davis* urged in this instance by the State. In *People v. Bond* (1989), 178 Ill. App. 3d 959, and more recently in *People v. House* (1990), 202 Ill. App. 3d 893, the fourth district applied the presumption of identity to an element of the crime charged without corroboration. However, the fourth district has also limited the presumption of identity to the context of a sentencing hearing (*People v. Stanley* (1983), 116 Ill. App. 3d 532, 537-38 (Miller, J., specially concurring)) and expressly held that outside of a sentencing hearing at a trial *in absentia*, the presumption of identity is not proof beyond a reasonable doubt without corroboration. (*People v. Newbern* (1989), 183 Ill. App. 3d 995; see also *People v. Broyld* (1989), 146 Ill. App. 3d 693.) Nor are appellate court decisions from the Appellate Court for the First and Fifth Districts dispositive of the question as both have applied the presumption of identity only in the context of sentencing hearings, and only when corroborated. *People v. Stewart* (1989), 186 Ill. App. 3d 833, 836-37; *People v. Gill* (1988), 169 Ill. App. 3d 1049, 1057; *People v. Hall* (1986), 145 Ill. App. 3d 873, 878.

With such unsettled appellate precedent, we return to *Davis* itself for guidance. The court cited its earlier *Davis* opinion that "an inflexible rule requiring formal proof of earlier court records only by authenti-

cated or certified copies of proof of identity \*\*\* [is] incompatible with considerations of judicial economy and efficiency" (*Davis*, 95 Ill. 2d at 31, citing *People v. Davis* (1976), 65 Ill. 2d 157, 164) and adopted the "general rule that identity of name gives rise to a rebuttable presumption of identity of person." *Davis*, 95 Ill. 2d at 31.

Presumptions and inferences are substitutes for evidentiary facts. (*People v. Housby* (1981), 84 Ill. 2d 415, 418.) As such, presumptions present serious due process concerns when applied in criminal contexts. (*Housby*, 84 Ill. 2d at 418-19.) Mandatory presumptions are distinguished from permissive presumptions. (*Housby*, 84 Ill. 2d at 420.) A mandatory presumption must flow beyond a reasonable doubt from the established fact. (*Housby*, 84 Ill. 2d at 420, citing *County Court v. Allen* (1979), 442 U.S. 140, 166, 60 L. Ed. 2d 777, 797, 99 S. Ct. 2213, 2229.) In contrast, a permissive presumption must have a "rational connection" (*Housby*, 84 Ill. 2d at 420, citing *Tot v. United States* (1943), 319 U.S. 463, 467, 87 L. Ed. 1519, 1524, 63 S. Ct. 1241, 1245), and is " 'more likely than not to flow from' " the proven fact (*Housby*, 84 Ill. 2d at 421, quoting *County Court*, 442 U.S. at 165, 60 L. Ed. 2d at 797, 99 S. Ct. at 2229).When the burden of proof is beyond a reasonable doubt, a permissive presumption must further be corroborated. *Housby*, 84 Ill. 2d at 421, citing *County Court*, 442 U.S. at 167, 60 L. Ed. 2d at 798, 99 S. Ct. at 2229-30.

In *Davis*, the court did not identify the presumption of identity as a permissive presumption. However, the presumption was corroborated by testimony of a witness that the defendant was in fact the person named in the certified copies of conviction. Thus, we interpret that decision to create a permissive presumption, which alone is adequate to satisfy a preponderance of the evidence "more likely than not" standard, but which must be corroborated when the burden is proof beyond a reasonable doubt.

Because in this instance defendant's prior conviction was an element of the crime charged, and it was the State's burden to prove defendant's conviction beyond a reasonable doubt, we hold that the State failed to meet its burden as to this element of the charged offenses. Accordingly, we reverse both defendant's conviction of unlawful use of weapons by a felon as well as his conviction of attempt (armed robbery). Those portions of defendant's convictions of aggravated assault and armed robbery that were not appealed are affirmed.

Affirmed in part; reversed in part.

BOWMAN and INGLIS, JJ., concur.